# 406    SUPREME COURT.

## ST. JOHNS & HALIFAX RAILROAD COMPANY, APPELLANT, vs. FRANCES RANSOM, APPELLEE.

DAMAGE BY FIRE SET BY RAILROAD LOCOMOTIVE—COMBUSTIBLE MATTER ON RAILROAD RIGHT-OF-WAY AND ROAD-BED, NEGLIGENCE WHEN—PRACTICE.

1. Where a defendant interposes the plea of the general issue, that requires nothing more than a joinder of issue thereon or the general *similiter* to make the issue complete, and goes into and through a full and final trial of the merits of the controversy embraced in the declaration and plea, without noticing the absence of such *similiter*, and without protest or objection to the trial because of its absence, he can not afterwards avail himself of the absence of such *similiter* as ground either for arrest of judgment or for reversal upon appeal.

2. While it is not negligence *per se* in a railroad company to allow combustible matter to accumulate or remain upon its road-bed and right-of-way, yet it may become negligence when taken in connection with other circumstances that render its presence there a cause of damage to others. Where it is apparent that damage would result to the adjacent property of others in the event of a fire started anywhere along a railway company's abutting road-bed, then it becomes such company's duty to render the chance escape there of fire from its engines less hazardous by keeping its road-bed and right-of-way clear of fire-feeding debris. The principle of the rule that, "the degree of care required to be used in any given case to avoid the imputation of negligence, must be according to the circumstances, or in proportion to the danger, such care as is ordinarily sufficient under similar circumstances to avoid danger and to secure safety," *Held*, to be applicable to the duty of a railroad company in keeping its right-of-way free of combustible matter.

3. Where the accumulation of combustible matter permitted by a railroad company to remain upon its road-bed and right-of-way is of such character as to render the small sparks that inevitably escape from its locomotives, despite the most careful use of the best-known and most approved appliances in common use for the arrest of sparks, themselves a source of danger and a constant menace to the adjacent property of others, then it is

such company's duty to remove such matter and keep its road-bed and right-of-way free thereof, and it is liable for its neglect of such duty when it results in damage to others.

4. Where a party against whom a referee has rendered judgment makes a motion to set aside the judgment found and for a new trial, within the ten days limited by law for making such motions, the fact that there is no written notice to the parties on file from the referee of his findings and judgment in the clerk's office, will not avail such moving party as a ground for reversal upon appeal. The fact that he made the motion for new trial within the limited time being of itself evidence that he had notice of the filing of such judgment, and that the purpose of the statute to afford him an opportunity for making such motion has been accomplished.

Appeal from the Circuit Court for Putnam county.

The facts in the case are stated in the opinion of the court.

*Calhoun, Gillis & De Witt* for Appellant.

*King & King* for Appellee.

Taylor, J.:

The appellee, plaintiff below, sued the appellant in case for damages for the destruction of her property, consisting of fencing, a barn, orange trees and standing timber, etc., by fire set out by one of appellant's locomotives on its right-of-way adjacent to plaintiff's premises. The cause was referred to and tried before a referee and resulted in a judgment in favor of the plaintiff for the sum of $2,000, besides the costs, amounting to $233.08, and from this judgment the defendant below appeals. The errors assigned are as follows: 1st. Proceeding with the trial of the cause when it was not at issue, no *similiter* to the defendant's plea of the general issue having been filed. 2nd. Refusing to admit evidence on behalf of the defendant

that was admissible, and in admitting evidence for the plaintiff that was inadmissible and objected to by defendant. 3rd. The refusal to set aside the findings and judgment and to grant the defendant's motion for new trial applied for upon the grounds, (a) that the judgment was excessive; (b) that it was contrary to law, and contrary to the evidence, and was not supported thereby. 4th. In the referee's failing to file in the record in the clerk's office of Putnam county any paper showing notice to defendant of the filing of his findings and judgment in the cause.

As to the first of these assignments, we find that the only plea interposed by the defendant was that of the general issue, or "not guilty," concluding to the country. All that was necessary to make the issue complete was a general *similiter*. None was filed by the plaintiff, but no notice was taken by any one of its absence, and all parties voluntarily went to trial without it, and without protest or objection because of its absence. Under these circumstances, the failure to file it is not such an error as will warrant a reversal of the judgment upon appeal after a full and complete trial of the merits of the controversy between the parties as contained in the declaration and plea. St. Johns & Halifax R. R. Co. vs. Shalley (decided at the present term), and other cases therein cited.

The second error assigned is entirely too general and indefinite to be considered. In it we are not directed to any particular piece of evidence that was offered by the defendant and rejected by the referee; nor to any admitted erroneously on behalf of the plaintiff over the defendant's objection. Neither in the briefs of the appellant are we cited to any particular instance of the admission or rejection of evidence by the referee to which this assignment would apply. We therefore

treat the second assignment as abandoned. St. Johns & Halifax R. R. Co. vs. Shalley, *supra*.

The refusal to grant the defendant's motion for a new trial upon the ground that the judgment was contrary to law and contrary to the evidence, involves consideration of the evidence in the cause. The declaration alleges, in substance, that prior to the 23rd day of March, 1888, the plaintiff granted to the defendant railway company a strip of land for its road-way 30 feet in width, and 1300 feet in length, upon which the defendant constructed its road. That when the defendant cleared and prepared the ground so granted for its railroad track, it cut off and dug up the weeds, grass, shrubs and other vegetable matter growing thereon, and carelessly and negligently allowed the same to remain upon said right-of-way, piled and heaped up in large quantities upon and near the said track, and upon and over the whole of said granted right-of-way adjoining the plaintiff's land, and allowed the same to remain there for a long time until it became dry and combustible; and that while it was in this condition it was set on fire by sparks from a locomotive of the defendant while passing over its said track on the 23rd day of March, 1888. That said fire communicated to vegetation growing upon the adjacent land of the plaintiff, and spread over a large part of her land, burning and destroying her property as follows:

| | |
|---|---:|
| 60 orange trees, of the value of | $ 830 |
| One barn, of the value of | 200 |
| 1740 feet of fence, of the value of | 300 |
| The soil on 25 acres of rich, uncleared land, and the forest growth of trees thereon, of the value of | 1,500 |

The forest trees upon three acres of land that served as a protection from the cold to her orange grove, worth......................... 1,000

$3,830

That the said destruction and loss of property to her was caused by the carelessness, negligence and improper conduct of the defendant in allowing the aforesaid dry and combustible matter to remain upon said right-of-way, and liable to be set on fire by sparks from its locomotives. The allegation that the defendant deposited the brush, grass, shrubs and other vegetable matter cleared from the road-bed in large quantities all along its right-of-way, adjacent to the premises of the plaintiff, and allowed it to remain there until it became dry and combustible, is not only amply sustained by the proofs, but no effort was made by the defendant to contradict it in any way. The proof further shows, without conflict, that at the time of the fire it was a very dry season, and that a high wind was blowing from the northeast towards the plaintiff's lands from the railroad that ran in an easterly and westerly direction along the northern boundary of the plaintiff's lands. Two witnesses for the plaintiff, who were at work on her land at the time of the fire, in plain view of the railroad and the defendant's passing train, and of two small shanties located near the railroad, on the northeast corner of the plaintiff's land, swear that they saw the defendant's train, drawn by a locomotive, go by towards Palatka between 10 and 11 o'clock in the morning. That there was no fire anywhere about the plaintiff's land, nor in the neighborhood of the two shanties prior to the passage of the train, but that in a very short time after the passage of the train, within a minute or two after, they saw the fire

start up in a pile of brush on the right-of-way on the side next to plaintiff's land. That they immediately went to it to try to put it out, but could not do so, although a good many others came to their help, because of the high wind blowing, and the dryness of the season, and the large accumulation of dry, combustible material piled up along the defendant's road-way. That it burned over plaintiff's land, destroying the property as alleged, and set the dwelling-house of the plaintiff on fire, but they succeeded in putting it out and saving it. These two witnesses, and still another witness for the plaintiff, swear positively that the fire started on or near the defendant's right-of-way, very shortly after the train passed, and that the point of its beginning was some distance west of where the two shanties stood; and that there was no fire at all anywhere in sight until after the train went by. That if there had been any fire prior to the passage of the train anywhere to the south or southwest of the two shanties, they were in plain view of the location and would have seen it, but that there was none until that which broke out west of the shanties on the defendant's right-of-way immediately after the defendant's train went by. The two witnesses whose testimony is first alluded to also swear that no one was about the shanties or along the defendant's railroad, or anywhere about the plaintiff's lands, who could have started the fire prior or subsequent to the passing of the train; that if there had been, they were in position to have seen, and would have seen them. On the other hand, two witnesses for the defendant, who were in its employ on the train alleged to have started the fire, swear that they were on the train and that before the train reached the plaintiff's land they saw a fire in the woods on the plaintiff's land some distance from the

railroad to the southwest of the two shanties, in the northeast corner of plaintiff's land. That it was burning fiercely before a northeast wind when their train first came in sight, and rapidly spreading to the south and southwest over plaintiff's premises. This conflict in the evidence as to the origin of the fire has been settled by the referee in favor of the truth of the matter being on the side of the plaintiff's witnesses, and we are bound by that finding as to the facts, and from those facts we think the referee was justified in concluding that the fire had its origin in the passing train. The defendant undertakes to avoid the responsibility for the damage done, upon the ground that its engine was in perfect order, fitted with the best device for arresting sparks in common use, and with perfect ash-pans, etc., and that it was carefully handled by a skilled and competent engineer; and to this effect its proof is ample and uncontradicted, but these same witnesses testify that despite the use of the best known and most perfect devices for preventing the escape of sparks, some sparks will escape, notwithstanding the utmost care.

The gist of the charge of carelessness and negligence against the defendant in the plaintiff's declaration is, that it deposited the brush and debris taken from its road-bed all along on its right-of-way adjoining the plaintiff's land, and carelessly allowed it to remain there until it became dry and combustible; and the proof, as found by the referee, shows that the fire started in this brush and debris. The uncontradicted proof shows further that this deposit of combustible matter became so threateningly dangerous that the plaintiff and her hired laborers habitually watched each passing train over defendant's road for fear of their starting a fire; and two of the plaintiff's wit-

nesses were engaged in grubbing out a fire-break on plaintiff's land parallel with defendant's road at the time this fire started; and that the plaintiff in person some time before pointed out to the company's chief engineer the dangerous manner in which combustible debris was piled up along its road-way, and requested him and another employe of the company to have it removed; besides which she wrote to the company itself calling their attention to it, and requesting its removal. The weight of the authorities agree that while it is not negligence *per se* in a railroad company to allow combustible matter to accumulate or remain upon its right-of-way, that still it may become negligence when taken in connection with other circumstances that render its presence there a cause of damage to others. And the facts of this case illustrate the principle of the rule. The proof is that the plaintiff's adjacent woodland had not been burned over for many years, and that consequently there was a large accummulation of leaves and decaying vegetable mould thereon that was highly combustible in dry seasons and that would quickly communicate a fire started therein near the defendant's road-bed to her improved premises. To this condition of affairs she repeatedly called the company's attention, Under these circumstances, owing to the apparent damage that would result to the plaintiff's premises in the event of a fire anywhere along the defendant's abutting road-way, it became the defendant's duty to render the chance escape there of fire from its engines less hazardous by a removal of the fire-feeding debris along its line; and under the circumstances here it was negligence on its part in putting it there and allowing it to remain until such debris became within itself the fruitful source of the plaintiff's injury. In Jacksonville, T. & K. W. Ry. Co. vs.

Peninsular Land, T. & M. Co., 27 Fla., 1, 9 South. Rep., 661, we held that "the degree of care required to be used in any given case to avoid the imputation of negligence, must be according to the circumstances or in proportion to the danger; such care as is ordinarily sufficient under similar circumstances to avoid danger and to secure safety." While it may not be negligence in the defendant to permit accumulations of combustible matter along its right-of-way at points where a fire ignited therein by a chance spark from its engines would produce no injury to the neighboring property of others, yet when its road passes near to the property of others that is so situated as to be patently exposed to damage by a fire started on or near its right-of-way, it becomes its duty to lessen the hazard there of a fire from its agencies by keeping its right-of-way clear of fire-breeding accumulations; and, in the event of damage resulting from its neglect of this duty, it is responsible therefor. The accumulations of combustible debris testified to in this case on the defendant's right-of-way were such that the small sparks that, the defendant's witnesses themselves testified, inevitably escaped from locomotives, notwithstanding the most skillful use of the best known appliances for their prevention, became a source of danger and a constant menace to the plaintiff's property; and under the circumstances it was the defendant's duty to guard against that danger by removing the accumulated debris that was the cause of it. The small sparks that inevitably escape from an engine when they fall upon ground clear of combustible matter will not ordinarily be productive of mischief, but the same sparks deposited among dry grass and leaves become as effectual an origin of conflagration as the larger cinders escaping from defective appliances. Perry vs. Southern Pacific

R. R. Co., 50 Cal., 578; Troxler vs. Richmond & Danville R. R. Co., 74 N. C., 377; 2 Rorer on Railroads, 791, 792; Longabaugh vs. Virginia City & Truckee R. R. Co., 9 Nev., 271; Salmon vs. Delaware, Lack. & Western R. R. Co., 9 Vroom (N. J.) 5, s. c. 20 Am. Rep., 356; Illinois Central R. R. Co., vs. Mills, 42 Ill., 407; Brighthope Ry. Co. vs. Rogers, 76 Va., 443, s. c. 8 Am. & Eng. R. R. Cases, 710; Karson vs. Milwaukee & St. Paul Ry. Co., 29 Minn., 12, s. c. 7 Am. & Eng. R. R. Cases, 501; Jones vs. Michigan Cent. R. R. Co., 59 Mich., 437; Richmond & Danville R. R. Co. vs. Medley, 75 Va., 499; Kellogg vs. Chicago & N. W. Ry. Co., 26 Wis., 223; Indiana, Bloomington & Western Ry. Co. vs. Overman, 110 Ind., 538; Burlington & Mo. R. R. Co. vs. Westover, 4 Neb., 268; Delaware, Lack. & Western R. R. Co. vs. Salmon, 39 N. J. Law (10 Vroom), 299; Gibbons vs. Wisconsin Valley R. R. Co., 66 Wis., 161; Kesee vs. Chicago & N. W. R. R. Co., 30 Iowa, 78.

The objection that the finding of the referee is excessive, is without foundation. The proof as to the value of the property destroyed is ample to have sustained even a larger recovery.

The fourth and last assignment of error is without merit. The objection made is not that the defendant did not *in fact* have notice of the filing by the referee of his findings and judgment in the clerk's office, but that there is no paper *evidence* of such notice filed with the record. The object of the statute in requiring the referee to give such notice was to give an opportunity to the losing party to present, within the time limited therefor, his motion for new trial. The defendant here was not deprived of this right, but did in fact have the notice required, as is abundantly evidenced by the fact that, within the time limited by law for that purpose,

it made its motion in due form to set aside the findings and judgment filed by the referee and for a new trial of the cause. St. Johns & Halifax R. R. Co. vs. Shalley, *supra*.

The judgment appealed from is affirmed.