P. S. ARNAU, APPELLANT, VS. FIRST NATIONAL BANK OF FLORIDA, APPELLEE.

E. M. ALBA, APPELLANT, VS. FIRST NATIONAL BANK OF FLORIDA, APPELLEE.

B. JOSEPH, APPELLANT, VS. FIRST NATIONAL BANK OF FLORIDA, APPELLEE.

ALBERT MEYERSON, APPELLANT, VS. FIRST NATIONAL BANK OF FLORIDA, APPELLEE.

NEGOTIABLE INSTRUMENTS IN HANDS OF INNOCENT PURCHASER WITH-OUT NOTICE—DEFENSES TO—CORPORATE CHARACTER OF PLAINTIFF —WHEN NECESSARY TO BE PROVED.—FILING OF FINDINGS BY REF-EREE.

1. Where a party makes his negotiable promissory note and intrusts it to the payee named therein, for the express purpose of be-ing negotiated and discounted and the proceeds applied by the payee as his agent to the purchase of United States bonds to be used in organizing a national bank in which the maker of the note was to be interested as a stockholder, and the payee named in such note negotiates and endorses the same before maturity to a *bona fide* purchaser for value, who had notice of the purpose and object of the note, the subsequent misappro-priation to his own uses by the payee of the funds received by him on the sale of such note, to which misappropriation the endorsee is in no wise a party, can not be used as a defense by the maker of such note to a suit thereon by such innocent en-dorsee.

2. In suits brought by alleged corporations, if the defendant pleads the general issue, making no issue, by special plea, as to the alleged corporate character of the plaintiff, he thereby admits the legal capacity of the plaintiff to sue as such, and no proof is necessary to establish such fact on the part of the plaintiff.

3. Under the provisions of section 4, p. 858, McClellan's Digest, the correct and better practice was for a referee who tried a cause to file his *findings* and judgment in the office of the Clerk of the Circuit Court and then give notice thereof to the parties;

but where a referee, under said statute, reduced his *findings* to writing, signing and dating them on the same day with the rendition of his judgment in the cause, but does not file them in the clerk's office until a subsequent day, when he passes upon a motion made by the defendant for a new trial, such irregularity in the filing of his findings is not cause for reversal of the judgment upon appeal.

Appeal from the Circuit Court for St. Johns and Duval counties.

The facts in the cases are stated in the opinion of the court.

*R. W. Davis* and *W. W. Dewhurst*, for Appellants.

*John E. Hartridge*, for Appellee.

TAYLOR, J.:

The First National Bank of Florida, as a corporation under the laws of the United States, instituted a separate suit in assumpsit in the Circuit Court of St. Johns county against each of the four several appellants, P. S. Arnau, E. M. Alba, B. Joseph and Albert Meyerson. All four of the cases were referred by agreement of the parties to a referee for trial, and all four of the cases resulted in a judgment in favor of the bank, as plaintiff, against the said several defendants, and from each several judgment the appellants have each taken their respective appeal.

The pleadings, evidence, exceptions taken and assignments of error upon appeal are identically the same in all four of the cases, with the exception of a difference in the amounts and dates of the notes sued upon in the several cases. The four causes have been submitted together by agreemgnt upon one brief, and

what is said in one of them applies to all the others, and the disposition of one of them disposes of all the others.

The declaration in each case, taking the one in the case against the appellant Meyerson as the example, with the exception of the difference in amounts and dates of the notes sued on in each, was as follows: "The First National Bank of Florida, a body corporate under and by virtue of the laws of the United States of America, plaintiff, by John E. Hartridge, its attorney, sues Albert Meyerson, defendant: For that on the 9th day of June, A. D. 1890, the defendant, Albert Meyerson, by his promissory note, now overdue, promised to pay to the order of George W. Gibbs, manager, five hundred dollars ($500), six months after date, with interest at the rate of eight *per cent. per annum* until paid; and the said George W. Gibbs, manager, endorsed said note to the plaintiff, and the said note was duly presented for payment, but the defendant did not pay same. And in the like sum for protest fees paid out by the plaintiff. And in the like sum for money paid by plaintiff for the defendant at his request. And in the like sum for interest on divers sums of money, before that time forborne by the plaintiff to the defendant at his request, for divers spaces of time before then elapsed. And the plaintiff claims damage in the sum of $800." Attached to each declaration was a copy of the note sued upon in each case respectively, differing in amounts and in dates by a few days, but in all other material respects as follows:

"ST. AUGUSTINE, FLA., June 9th, 1890.
$500. Six months after date I promise to pay to the order of Geo. W. Gibbs, manager, five hundred dollars, with interest at the rate of eight *per cent. per*

*annum* until paid, for value received; negotiable and payable at the St. Johns County Savings Bank and Real Estate Exchange, of St. Augustine, Fla.; and if not paid at maturity, this note may be placed in the hands of an attorney-at-law for collection, and, in that event, it is agreed and promised by the makers and endorsers severally to pay an additional sum of ——— dollars for attorney's fees. (Signed) Albert Meyerson.'' Endorsed on face by George W. Gibbs, manager.

To the declaration in each case the following pleas were interposed: 1st. For a first plea the defendant says that he did not make and execute the said promissory note in the said declaration mentioned. 2d. For a second plea, and as to the second, third and fourth counts of the plaintiff's declaration, says he never was indebted as in said declaration alleged. 3d. For a third plea, and a defense on equitable grounds, the defendant says that without any consideration whatever he made and delivered to George W. Gibbs for the express purpose of buying United States bonds to establish a national bank in St. Augustine, and for no other purpose, a certain promissory note dated the 9th day of June, A. D. 1890, for the sum of $500, payable to the order of George W. Gibbs, manager; that plaintiff received from said George W. Gibbs in payment of an antecedent debt due from said Gibbs to said plaintiff the said paper writing upon which this suit is brought which is set out by a copy thereof attached to this declaration and purporting to be the promissory note of this defendant, the same which was given by this defendant to said George W. Gibbs upon trust, and which, after an alteration had been made therein, said George W. Gibbs, in breach of faith, so sold to said plaintiff. 4th. And for a fourth

plea the defendant says that without any considera-
tion he made and delivered to one George W. Gibbs
for the express purpose of buying United States bonds
to establish a national bank in St. Augustine, and for
no other purpose, a promissory note dated the 9th day
of June, A. D. 1890, for the sum of five hundred dol-
lars, payable to George W. Gibbs, manager; that after
such delivery, and without the consent or knowledge
of the defendant, the holder of said note altered said
promissory note in a material part thereof, and there-
after plaintiff purchased from said George W. Gibbs
the said altered promissory note, and before and at the
time of its said purchase of said promissory note,
plaintiff knew that said George W. Gibbs, the payee
therein, held said note given by the defendant upon
trust, and was about to divert the proceeds obtained
from said sale of said note from the purposes for
which said note was given and held, and was about to
use the whole or some part of the proceeds derived
from said sale of said note to plaintiff, for the payment
of an antecedent debt due from said Gibbs to said
plaintiff; and defendant alleges that said Gibbs did so
use the whole or some part of the proceeds obtained
from the sale of the said altered note to plaintiff, with
plaintiff's knowledge and consent to pay to plaintiff
on account of said antecedent debt, and that said note
set out in the declaration, a copy attached, is the said
altered note."

To the third plea above the plaintiff demurred upon
the grounds: 1st. That the said plea does not, if true,
afford any defense to the defendant in this case. 2d.
Because said third plea does not, if true, show that
the plaintiff herein was in any way a party to or con-
nected with the transaction sought to be set up in said
third plea, or had notice thereof. Upon all the other

pleas the plaintiff joined issue. The referee sustained the plaintiff's demurrer to the defendant's third plea, and this ruling is the first assignment of error. There was no error in sustaining the demurrer to the defendant's third plea. In the first place, if it sets up any sufficient defense at all to the plaintiff's declaration, it was purely a legal defense, and was not the subject of a plea upon equitable grounds; and the defense that it attempts to urge is fully covered by the first and fourth pleas upon which the case was tried, and from this view it amounted to a repetition; and, even though it could be said that the demurrer thereto was improperly sustained, it was harmless error.

The second and third assignments of error are the refusals of the referee to permit the following questions to be propounded to the plaintiff's witness, George W. Gibbs, upon cross-examination: "Whether or not upon the day upon which this assignment was made you said in the presence of A. Meyerson, Mr. Sulzner and Dr. Alba, at the meeting upon that day, in answer to a question from Mr. Meyerson, as follows: 'Did you not know that this bank was insolvent at the time referred to,' the time at which these notes were discounted, you answered 'yes'." "Did you at the same time, and in the presence of the said gentlemen, in answer to the next question propounded by Mr. Meyerson: 'Why in h——l did you put our money in there,' say I did it to tide this bank over; I expected to be able to save this bank, and carry on the other besides'?" The objection to both of these questions was, that they were irrelevant. The objections were well taken, and there was no error in excluding the questions. The proof showed that the note sued upon in each case was negotiable and payable six months after their respective dates. That they were all made

payable to the order of George W. Gibbs, manager.
That in fact they were given by the makers for the
purpose of being negotiated, and the proceeds thereof
were to be applied by Gibbs, the payee, to the pur-
chase of United States bonds with which to establish
and conduct a national bank, to be called "The Ponce
de Leon National Bank," in which the makers of
these notes were to be stockholders to the amount of
the note given by each. That George W. Gibbs, the
payee named in the notes, and Hopkins and Livingston
were, at the time the notes were given, and had been
for some time prior thereto, partners, and engaged at
St. Augustine in conducting a private banking busi-
ness under the firm name of the "St. Johns County
Savings Bank and Real Estate Exchange," of which
George W. Gibbs was manager. That after the notes
sued upon in these cases had been negotiated and sold
to the First National Bank of Florida by Gibbs, and
the money paid therefor by the said endorsee, the
banking firm of Gibbs, Hopkins and Livingston col-
lapsed and failed, and made an assignment for the
benefit of their creditors. That the moneys realized
from the negotiation and sale of these notes was put
by said private banking firm of Gibbs, Hopkins and
Livingston upon their books to the credit of the re-
spective makers of said notes, and was used by said
firm in their banking business and was lost to the
makers of the notes in the collapse of said private
bank. The proofs show that the plaintiff endorsee of
the notes was an innocent purchaser of them for full
value and without notice, long prior to their maturity.
That before negotiating for or discounting the notes
the plaintiff endorsee, knowing for what purpose the
notes were given, required the payee, Gibbs, to pro-
cure from each maker thereof a special written au-

thority to him to negotiate or discount them, which they all gave. There was no proof even tending to show any bad faith or collusion between the plaintiff endorsee of said note and George W. Gibbs, the original payee named therein, either in the discounting thereof or in the subsequent misappropriation of the proceeds thereof by Gibbs or his banking firm. Under these circumstances the evidence sought to be elicited by the excluded questions was entirely irrelevant to any issue between the parties in these causes.

The fourth assignment of error is the exclusion by the referee of the following question to the same witness upon cross-examination: "This (the note) is dated June the 9th, and the assignment of the St. Johns County Savings Bank and Real Estate Exchange was some time in September; did the defendant at any time between June and September make any complaint to you of the delay in establishing the Ponce de Leon National Bank, upon the ground that he paid interest upon his promissory note?" The objection sustained to the question was because of its irrelevancy. There was no error in the exclusion of this question. So far as the plaintiff was concerned as the innocent purchaser without notice before maturinty of the defendant's negotiable promissory note, it could make no possible difference in law what were the subsequent complaints or bickerings between the defendant and the original payee named in said notes as to the consummation of the purposes for which said notes were given, and to which the plaintiff was in no way a party.

The exclusion by the referee of the following questions to the defendants in each of said causes are assigned as the fifth, seventh and eighth errors: "Did Mr. Gibbs ever tell you that he did not need the money

upon this note to establish his bank, and that he would not use the note; what did he say in regard to this?" "Did you ever go to Mr. Gibbs at any time between the date of this note and the time he made an assignment and make any complaint to him that you were paying interest upon a promissory note, and that there was delay in establishing his bank?" "Was this money or the proceeds of this note placed to your credit there in the St. Johns County Savings Bank?" The objection sustained by the referee to each of these questions was because of their irrelevancy. There was no error in these rulings. As against the plaintiff, who was an innocent endorsee for value before maturity of the defendant's negotiable note, it could not avail the defendant as a defense, no matter what representations may have been made to him, in the absence of the plaintiff endorsee, by the payee named in the note as to whether he needed the proceeds of the note for any purpose; nor could any complaints made by the defendant to such original payee of the note, touching the consummation of the object for which the note or its proceeds were to be used, avail the defendant as against such innocent endorsee without notice; nor could the deposit of the proceeds of said note in the payee's private bank, or any other disposition thereof by him, avail the defendant as a defense against such innocent endorsee before maturity of his negotiable note. All of the questions excluded were wholly irrelevant.

The ninth assignment of error is the exclusion by the referee of the following question propounded on behalf of the defendant in each of said causes to one G. A. Crocker, a witness for the defendants, who had testified that he was a book-keeper, and that after the assignment of the firm of Gibbs, Hopkins and

Livingston, doing business as the St. Johns County Savings Bank and Real Estate Exchange, he had examined their books, *viz:* "There is in testimony here, Mr. Crocker, that $11,500 of notes were negotiated at the First National Bank of Florida, and that it was placed to the credit of the St. Johns County Savings Bank and Real Estate Exchange. How much of that $11,500 that was then placed to their credit was used in the payment of the debts of that bank then existing?" The question was objected to because of its irrelevancy, and because it sought to elicit testimony that was not pertinent to the issues. There was no error in this ruling. As before shown, the plaintiff endorsee was an innocent purchaser without notice and before maturity of the defendant's negotiable note. The defendant maker of that note entrusted it to the payee Gibbs named therein for the express purpose of being negotiated and the proceeds applied by Gibbs, as the defendant's agent, to the purchase of United States Bonds, in the absence of any proof showing any fraudulent participation by the plaintiff endorsee in a misappropriation of the proceeds by the defendant's agent, it could not avail the defendant as a defense against such innocent endorsee to show that the proceeds were applied by the defendant's agent to other purposes than the one for which he took the note in trust. If the question had sought to show whether any portion of the proceeds of the notes negotiated to the plaintiff had been applied in the negotiation therefor, to the payment of antecedent debts due by Gibbs or his bank *to the plaintiff*, then it would have been pertinent as bearing upon the good faith and innocence of the plaintiff in the purchase thereof, but the question excluded is not so confined, but seeks generally to elicit testimony tending to show a general

misappropriation of the proceeds of the negotiated note without in any way connecting the plaintiff endorsee with such misappropriation, or with any knowledge thereof.

The tenth assignment of error is the exclusion by the referee of the following question propounded on behalf of the defense to the plaintiff's witness George W. Gibbs on cross-examination: "At the time you made this explanation did you not know that the St. Johns County Savings Bank was insolvent then?" The question was objected to on the ground of impertinence and irrelevancy. There was no error in this ruling. The witness had just detailed that when these notes were made to him he had explained to the makers that there would be no interest for them to pay on the notes, as he or his bank would pay the interest accruing thereon. How these explanations or promises between the makers of the notes and the original payee therein, or the solvency or insolvency of the payee's private bank can effect the liability of the defendants to pay their negotiable notes in the hands of an innocent endorsee thereof without notice, and before maturity, who is not shown to be a party to, or to have any knowledge of, any of the *mala fides* of the payee of said notes while acting as the trusted agent of the makers thereof, we can not and do not see.

The eleventh assignment of error, the overruling of the defendant's motion for new trial, involves and includes the twelfth, thirteenth, fourteenth, fifteenth and sixteenth assignments of error, the motion for new trial being upon the grounds that the judgment of the referee was contrary to the evidence and to the weight of the evidence, and contrary to the law of the case, and because there are no findings of the referee pre-

JUNE TERM, 1895. 409

Arnau et al. v. First National Bank of Florida.—Opinion of Court.

ceding or connected with the judgment rendered. We have already stated the substantial facts established by the proofs in the cause, and as to them we do not think that the judgment of the referee was at all contrary to the evidence or to the weight thereof. There was an issue presented by the defendants in each cause, whereby they contended that the notes sued upon had been altered without their knowledge or consent after their execution, by an erasure of the words "after maturity," by which they were made to draw interest from their dates instead of after the time of their maturity. Upon this issue there was conflicting proof, but we are inclined to think with the referee that the weight and probabilities of the proofs are with the plaintiff's contention, that there was no alteration after execution of the notes, and as the findings of the referee have settled whatever conflicts exist in the proofs upon this point, we can not disturb his finding. The plaintiff in its declarations alleges that it is a corporation under the laws of the United States. The defendants did not deny such allegation by any plea or make any issue thereon whatever, yet the defendants now contend here that the findings and judgments of the referee were contrary to law, because it was incumbent on the plaintiff to prove its corporate character. There is no merit in this contention. The law is well-settled that in actions by alleged corporations, if the defendant pleads the general issue at common law, making no issue, by special plea, as to the alleged corporate character of the plaintiff, he thereby admits the legal capacity of the plaintiff to sue as such, and no proof is necessary to establish such fact on the part of the plaintiff. 2 Thompson's Com. on the Law of Corporations, sec. 1814; Field on Corporations, sec. 387 and citations; Rockland, Mt. D. & S. Steam-Boat Co. vs.

Sewall, 78 Maine, 167, 3 Atl. Rep. 181; Pullman vs. Upton, 96 U. S. 328; Prince & Garrett vs. Commercial Bank of Columbus, 1 Ala. 241, S. C. 34 Am. Dec. 773; Society for the Propagation, &c., vs. Town of Pawlet, 4 Peters, 480; West Winsted Savings Bank, &c., vs. Ford, 27 Conn. 282, S. C. 71 Am. Dec. 66; Taylor vs. Bank of Illinois, 7 T. B. Mon. 576.

It is contended that the proofs show that the plaintiff took said notes in payment of an antecedent debt due it by Gibb's banking firm, and that it did not pay out any money therefor, and that its knowledge of the purpose for which said notes were given rendered this a fraud on defendants, and stripped the plaintiff of the character of an innocent holder without notice. There is no proof even tending to prove the conclusion upon which this contention is based; on the contrary, the uncontradicted testimony of the plaintiff's cashier is pointed and positive that the notes sued upon were not taken for any antecedent debt due the plaintiff by Gibbs or his firm; but, on the contrary, that all but a small amount of the proceeds of its purchase of said notes was paid over upon the checks of Gibbs. It is further contended that there was no proof that the notes sued upon were endorsed to the plaintiff. There is no merit in this contention. Each note introduced in evidence showed the endorsement on its face of the payee Gibbs, and though this was in blank, no question was raised as to the genuineness of his signature of endorsement thereon, and the proof is abundant that he delivered them to the bank endorsed by him as they appeared in proof, and that the bank paid him for them; but besides this there is no issue raised as to the alleged fact of endorsement, either by plea, or at the trial when the notes were offered; but, on the con-

trary, the defendant's fourth plea practically admits the endorsement of the notes to the plaintiff.

It is contended further that the judgment should be reversed because "there are no *findings* preceding or connected with the judgment of the referee." In the record in each of said causes we find a formal set of "findings" signed by the referee and dated on the same day with the formal judgment rendered by him in each cause. The *judgment* in each cause was dated July 14th, 1891, and was filed in the clerk's office July 15th, 1891. The referee's *findings* were dated with the judgments on July 14th, but do not appear to have been filed in the clerk's office until July 27th, on which latter date the defendant's motion for new trial was also overruled. Section 4, p. 858 McClellan's Digest, in force when these causes were tried, does not undertake to direct or dictate when the referee who tries a cause shall file his findings and judgment in the clerk's office, but directs that whenever he does file them he shall *give notice of such filing* to the respective parties; and, *from the date of such notice*, the parties were allowed ten days in which to make a motion for new trial or in arrest of judgment. In construing the effect of this statute in Stewart vs. Mathews, 19 Fla. 752, it was held by this court that the parties were not prejudiced by the judgment or report of the referee until such *notice had been given*, and that until the lapse of ten days from the giving of such notice by the referee his judgment did not become the judgment of the Circuit Court for execution. Under this construction of the statute, that we entirely adhere to, it was the right of the defendants in these causes to have waited until the referee gave them notice of the filing in the clerk's office of his findings and judgment before making their motions

for new trials, and the judgments could not have affected them until such notice was given them, upon or after the filing of such findings and judgment. The defendants saw proper, however, to make motions for new trials, and, under the rulings of this court in St. Johns & Halifax R. R. Co. vs. Shalley, 33 Fla. 397, 14 South. Rep. 890, the Same vs. Ransom, 33 Fla. 406, 14 South. Rep. 892, the making of such motions was evidence that the parties had the requisite notice in fact of such findings by the referee of his findings and judgment, and supplied the want of a formal written notice by the referee in the record. It would have been the better and more accurate practice for the referee to have filed his findings in the clerk's office along with the formal judgment rendered by him, instead of filing them a few days later at the time of passing upon the defendant's motion for new trial, but where he did in fact, as appears from the records before us, prepare his findings on the same day with the formal judgment rendered, and files them in the clerk's office along with his denial for a motion for new trial, we can not see how such irregularity can afterwards affect or avail the defendant as a ground for reversal of the judgment upon appeal. He should have taken advantage of the omission by withholding his motion for new trial until after the findings were filed in the clerk's office and notice duly given to him thereof; or he could have claimed a postponement of the hearing of his motion for new trial for ten days after the actual filing of such findings in the clerk's office and the giving of due notice to him thereof.

It is further contended that the judgment of the referee is inconsistent with and contradictory to the findings of the referee. There is no foundation in fact for this contention. We are unable to discover any

inconsistency or contradiction between the findings of the referee and the judgments rendered by him. Neither can we discover that the judgments appealed from are contrary to the evidence or to the law in such cases; on the contrary, we think they are fully sustained by the evidence and are in full accord with the law applicable to the facts.

Finding no errors in the judgments appealed from, the said judgments in each of the said four causes are hereby affirmed.