L. C. GRACY, PLAINTIFF IN ERROR, v. THE ATLANTIC COAST LINE RAILROAD COMPANY, A CORPORATION, DEFENDANT IN ERROR.

1. Under the proviso in Rule 1 for the preparation of bills of exceptions adopted in 1905, which creates an exception to the rule that the testimony shall be stated in narrative form, "every question to a witness which is the basis of some ground for reversal mentioned in the assignment of errors, with its answer if any shall be stated at length," and it is no ground of objection that such questions and answers are "scattered through the record." They may be inserted in that part of the narrative where they occur, in order of giving testimony.

2. If a question to a witness be improperly overruled, yet if the witness in the course of his testimony fully answers the question, no reversible error is committed.

3. Except where experts are being examined a witness cannot be called upon to give an opinion upon facts testified to by other witnesses.

4. A trial judge must exercise some discretion over the matter of the repetition of testimony, and where this discretion is not unreasonably exercised, there is no error in his refusing to allow a witness to repeat his testimony.

5. A charge that "a railroad company free from negligence is not liable for damages from fire kindled by sparks or clinkers from locomotives" states a correct abstract proposition of law, and it is not error to give such a charge, especially when the question whether the railroad company was guilty of negligence, was left to the jury by other appropriate charges.

6. Where a declaration against a railroad company contains

four counts charging that fire was set out by or from
the engine in various ways, and issue is joined on pleas
to all the counts and it is shown that the plaintiff's
property near the railroad was destroyed by fire, and
the plaintiff does not inform the court before the jury
is charged that he does not rely on some of the counts,
and the defendant has introduced evidence tending to
rebut the presumption that the fire was set out, as in-
dicated in some of the counts, which the plaintiff now
contends he did not insist on, the trial court commits
no reversible error, in giving correct charges, applicable
to those counts, for the court does not thereby vary or
narrow the issues which the plaintiff by his pleadings
submits to the jury.

7. In determining whether an instruction is erroneous it must
be considered and construed together with, and in the
light of all the instructions and charges given, and if
when so considered, it was not calculated to mislead
the jury, it does not constitute reversible error.

8. A plaintiff cannot be heard to object to an instruction
given at the instance of the defendant which is identical
in purport with one given at his own instance.

9. An instruction that "The jury are not permitted to infer
or presume for want of positive truths to the contrary
that the fire was communicated by the operation of a
railroad," contains a correct proposition of law inas-
much as it is the law, in case like the one at bar, that
the burden of proving, in the first instance, that the fire
was caused by the defendant, was on the plaintiff, and
*this fact could not be presumed* or inferred, without evi-
dence to affirmatively support such presumption or in-
ference.

10. A plaintiff cannot complain of an instruction given at
the request of the defendant limiting the finding of the

jury to the net market value of the property of the plaintiff which was destroyed, when the verdict of the jury was for the defendant, and no new trial is awarded.

11. An instruction given out of the abundance of caution so as to cause the jury to confine their investigation to the issues made by the pleadings is not erroneous.

12. Those who establish themselves in the neighborhood of railroads must know that trains are expected to run upon them, and if there are risks arising from no want of proper care in the equipment and management of engines and trains, those risks are not chargeable to the railroads, but are incidental to the situation; and where the foregoing proposition is substantially given in an instruction requested by the defendant railroad, and is accompanied by charges of the trial court to the effect that the care required of a railroad, under such circumstances, must be proportioned to the circumstances, or the danger, the plaintiff cannot complain.

13. The trial judge commits no error in re-reading to the jury, at their request, one of the instructions which he had given them.

14. This court does not approve of the practice of requesting an unnecessarily large number of instructions to the jury. They are calculated to confuse and mislead a jury, cannot always be critically examined by the trial judge, afford unnecessary opportunities for error, and are burdensome to the courts.

This case was decided by Division B.

Writ of error to the circuit court for Alachua county.

## STATEMENT.

L. C. Gracy, the plaintiff in error, hereinafter described as the plaintiff, in June, 1905, brought a suit at law for damages against The Atlantic Coast Line Railroad Company, the defendant in error, hereinafter described as the defendant, in the circuit court of Alachua county. The declaration contains four counts, and is in the following words: "L. C. Gracy, by W. H. Palmer and Robt. E. Davis, his attorneys, sues Atlantic Coast Line Railroad Company, a corporation organized and existing under the laws of the state of Virginia, and operating a railroad in the county of Alachua, state of Florida.

1st Count.  For that whereas, the defendant was on the 9th day of April, A. D. 1905, and for a long time prior thereto, had been operating a railroad over and through the county of Alachua, from the station of High Springs, in said county, to and beyond the station of Rochelle, in said county, and used and run thereon in the operation of its said business, certain engines and locomotives, in which was burned coal or wood for fuel; that on said date, and for a long time prior thereto, the plaintiff was and had been operating a saw mill near the R. B. Mile Post of the defendant's said railroad, between the stations mentioned, known as Gracy's Mill, and adjacent to the right of way of the defendant's said railroad; and on said date aforesaid, had cut and stacked up on the yard of his said mill, the property of the plaintiff, near and adjacent to said right of way aforesaid, 150,000 feet of merchantable pine lumber, the property of the plaintiff, of the value of $2,000.00.

That on said date aforesaid, the defendant, by certain

23—S C

of its agents and employees, so carelessly ran and managed one of its certain engines and locomotives aforesaid; that sparks, fire and live cinders were permitted to escape therefrom, and carelessly and negligently permitted the same to be communicated to and burn certain grass, weeds and dry rubbish which the said defendant had negligently and carelessly permitted to accumulate along the line of its said right of way, near and adjacent to said lumber of the plaintiff, by means of which the said fire, by and through the carelessness and negligence of the defendant, and without fault upon the part of the plaintiff, did spread from the defendant's said right of way, and was communicated to, caught, fired, consumed and destroyed the said lumber of the plaintiff aforesaid, to the damage of the plaintiff in the sum of $2,000.00."

The 2nd, 3rd and 4th counts of the declaration only vary from the first count in setting up the alleged negligence of the defendant, and in that regard they are as follows:

"2nd Count.  *  *  *  That on the said date aforesaid, the defendant, by certain of its agents and employees, so carelessly and negligently ran and managed one of its certain engines and locomotives aforesaid, that sparks, fire and live cinders were permitted to escape therefrom, and by and through the carelessness and negligence of the defendant, and without fault upon the part of the plaintiff, was permitted to and did catch fire, consume and destroy the said lumber of the plaintiff, to the damage of the plaintiff in the sum of $2,000.00.

3rd Count.  *  *  *  That on said date aforesaid, certain of the agents and employees of said defendant, carelessly and negligently emptied and discharged a large quantity of fire, fuel and live cinders from one of the engines and locomotives of the said defendant upon the

track and right of way of the said defendant, and care-
lessly and negligently permitted said fire, fuel and live
cinders to communicate to and burn certain grass, weeds
and dry rubbish, which the said defendant had negligently
and carelessly permitted to accumulate along the line of
its said right of way, near and adjacent to said lumber
of the plaintiff, by means of which the said fire, by and
through the carelessness and negligence of the defendant,
and without fault upon the part of the plaintiff, did
spread from the defendant's said right of way, and was
communicated to, caught, fired, consumed and destroyed
the said lumber of the plaintiff aforesaid, to the damage of
the plaintiff in the sum of $2,000.00.

4th Count. * * * That on the said date aforesaid,
certain of the agents and employees of said defendant,
carelessly and negligently emptied and discharged a large
quantity of fire, fuel and live cinders from one of the en-
gines and locomotives of the said defendant upon the
track and right of way of the said defendant, and care-
lessly and negligently permitted said fire, fuel and live
cinders to spread fire from the defendant's said right of
way, and without fault upon the part of said plaintiff,
carelessly and negligently permitted said fire to communi-
cate to, catch, fire, consume and destroy the said lumber
of the plaintiff aforesaid, to the damage of the plaintiff
in the sum of $2,000.00.

Wherefore, the plaintiff claims that he hath been in-
jured and claims damage in the sum of $2,000.00."

The defendant pleaded "not guilty," and on a trial in
December, 1905, the jury returned a verdict of not guilty,
and a judgment was entered in favor of the defendant.
From this judgment a writ of error was sued out from this
court.

*W. H. Palmer* and *Robt. E. Davis,* for Plaintiff in Error;

*R. A. Burford* and *Carter* & *Layton,* for Defendant in Error.

HOCKER, J. (*after stating the facts*): Objection is made by the defendant to the consideration by this court of assignments numbered 1, 3, 4, 5 and 6, because while the bulk of the testimony is given in the bill of exceptions in narrative form yet these assignments are based on certain questions propounded to witnesses which with the answers are scattered through the record. It seems to us that the objection made is untenable and that the bill of exceptions in these particulars complies with the proviso in Special Rule 1 to be observed in the preparation of Bills of Exception and Transcripts of Record, adopted in 1905.

The first assignment is based on the ruling of the court striking out the answer of the plaintiff to the following question: "Do you know what kind of fuel they were using in that engine that day? Ans. The engineer told me it was burning coal." Granting that the ruling was erroneous, yet no harm was sustained by the plaintiff because in his testimony the engineer, Daniels, who was operating the engine on the day of the fire, states in his testimony, "My engine was burning coal that day—was burning good coal, and was steaming well."

The third assignment is based on the refusal of the court to permit the plaintiff on cross-examination to ask the engineer, Daniels, the following question: "Mr. Daniels, if a hot clinker that would set fire to little pieces of wood and trash in which it had fallen was found near that commissary that morning before your train got out of sight, how could you account for it?" Plaintiff's witnesses had

testified to finding a burning clinker on the sidetrack near the commissary on the morning before the fire where Witness Daniels' train had been on the sidetrack getting out a car at the mill of the plaintiff, and before his train had gotten out of sight. The witness had said that no clinkers had been put off his engine at that point. We see no error in the ruling of the court. The question called for the opinion of the witness upon facts given in testimony by other witnesses, and such a question is not permissible under the authority of Mann v. State, 23 Fla. 610, 3 South. Rep. 207, except when experts are being examined.

The fourth assignment of error is based on the refusal of the court to permit plaintiff Gracy on rebuttal to answer the following question: "You have heard the testimony of Mr. Jolly and others relative to this burned district—you have also testified that you were on the ground the day of the fire, and the following day; I wish you would take this blue print and explain to the jury exactly what that burned district embraced."

The objection to the question was that it solicited testimony which had already been given by the witness. For the plaintiff it is contended that the "blue print" referred to was only introduced in connection with the testimony of the witness, Jolly, who was the defendant's witness, after the plaintiff had been examined. It appears from the record that Mr. Gracy upon cross-examination had examined a "blue print" and had given evidence to the jury based on that examination. He refers in this evidence to the "burned district," to the location of the clinkers and the extent of the burned district. On redirect examination, immediately following this cross-examination, he stated: "The area between the pencil lines indicated on this map is the burned district as I

remember it." All this occurred before the question was propounded which forms the basis of this assignment. There is but one blue print or diagram, showing the location of the railroad track, mill, lumber piles, burned district and the other local features of the situation at Gracy's mill, shown by the record.

A circuit judge must exercise some discretion over the matter of the repetition of testimony. The record does not show any special reason why Mr. Gracy should have been permitted to enter generally a second time into a discussion of the extent of the burned district, when he had gone into the matter with great detail in his previous testimony. We do not think error is made to appear under this assignment.

The fifth assignment is based on the refusal of the judge to permit the plaintiff, as a witness in his own behalf, to answer the following question, to wit: "When was it that you ascertained in your opinion that the lumber caught fire from the clinkers?" The plaintiff in his previous testimony had stated that he first thought the fire was set out by a pile of burning crossties. The lumber was burned on Sunday and he arrived at the mill about the time the fire had been extinguished. It was then he formed this impression, which he had communicated to others. But on Monday following he went from Gainesville to the mill, arriving there about noon. He then re-examined and found clinkers on and near the railroad track, which had started fires, and formed the opinion that the fire which did the injury was set out by the hot clinkers. It seems to us that the question had been sufficiently answered.

The sixth assignment is based on the refusal of the court to permit plaintiff's witness, J. C. Stokes, to answer

the following question propounded to him by the plaintiff's attorney: "Look at this map and explain to the jury what portion of the territory between the railroad and the burned lumber was burned over during that fire." The testimony of this witness immediately following the foregoing question plainly shows that the witness examined the map and testified at length as to what part of the territory between the railroad and the burned lumber was burnt over. It is not very easy to determine from this evidence what part of the territory was burned, but the witness himself construes it to mean "that the space between the fence (a wire fence on the right of way) and the lumber pile was burned off," but he could not say that it burned up to the track. Further along in his testimony this witness says: "The map is not practically correct as to indications of the burned grass—not according to my idea," and indicated that the burned grass ought to be a little further in *that* direction." The record does not clearly inform us what he meant by "that direction." He then almost immediately says, speaking of the map: "It may be right, I don't know, I am not able to say whether it extended beyond the crossing or not. The map may be all right as to the burned district." No error appears under this assignment.

The ninth assignment is based on the court giving the first instruction requested by the defendant, to wit: "A railroad company free from negligence is not liable for damages from fire kindled by sparks or clinkers from locomotives." The contention of the plaintiff is that while the charge embraces a correct abstract proposition of law, so far as fires kindled by sparks are concerned, it is not correct when applied to clinkers from locomotives. No authority is referred to sustaining this contention, and

no reason occurs to us, from the nature of "clinkers," which would make the general rule inapplicable to them. We think the court stated in this instruction a correct abstract proposition of law, for negligence is the basis of the plaintiff's claim. If there was no negligence on the part of the railroad company, the plaintiff has no claim. The question of negligence was appropriately left to the jury by other instructions.

The tenth assignment is based on the second instruction given at defendant's request. It is as follows: "Railroad companies being authorized by law to employ the powerful and dangerous agency of steam, are required to exercise all ordinary and reasonable care and diligence in the construction, equipment, operation and management of their locomotives; ordinary and reasonable care and diligence, however, does not require the adoption of every new invention or contrivance, which science may or can suggest. They fulfill the measure of their duty in this respect by adopting such improved appliances and contrivances as are in general practical use by well regulated railroad companies, and which have been proved by experience to be adapted to the purpose. When they have discharged this duty, and the locomotive is properly and prudently managed, they are not liable for accidental injuries caused by the escape of fire from their engines."

It is contended that this charge lacks a predicate in the evidence; that while the first and second counts charge that the fire was caused by sparks from the engine, no evidence was introduced by the plaintiff to sustain this allegation; that plaintiff's case was based on the 3rd and 4th counts alleging that the fire was caused by clinkers thrown from the engine. It is also contended that it excludes all evidence of the fire starting in the grass on the

defendant's right of way, or whether the defendant had skilled employees operating its engines. It is true as a general rule that instructions should be confined to the issues made by the pleadings, and the evidence bearing on these issues. Savannah, F. & W. Ry. Co. v. Tiedeman, 39 Fla. 196, 22 South. Rep. 658, and cases cited.

A plaintiff has the right to complain of instructions which vary or narrow these issues to his prejudice, and a defendant has a right to complain if they are so varied or broadened as to embrace matters not therein included to his prejudice. In the case at bar, however, the first two counts of the declaration averred that the fire was caused by "sparks, fire and live cinders," which were negligently permitted to escape from the engine. The record does not disclose that the plaintiff ever notified the court or the defendant's attorneys that he abandoned those two counts. The defendant introduced a good deal of testimony tending to rebut the averments of these two counts, without objection on the part of the plaintiff. Even if it were clear that the instruction was not strictly applicable to the plaintiff's testimony, still under the circumstances, he has no right to complain of it. If he intended to abandon the first two counts, he should have informed the court before the jury was charged.

As to the contention that the instruction excluded consideration of evidence tending to show negligence in the defendant, and especially that fire was communicated to the grass growing on defendant's right of way, we do not think it tenable. The instruction dealt solely with the liability of the defendant as regards the construction, equipment, operation and management of its locomotives. This instruction is to be considered in connection with all the other charges and instructions. The first instruction

given at the request of the plaintiff was as follows: "If you find from the evidence that the agents and servants of the defendant threw from one of the engines of the defendant, on the morning of the fire, certain clinkers, and that said clinkers fell upon the right of way of the defendant, and fired the grass growing thereon, and that such fire spread from that place to the grass growing and standing between said right of way and the lumber of the plaintiff, and consumed the same, and spreading thence, fired and consumed the property of the plaintiff, and that the plaintiff was at the time using ordinary care and caution in the protection of his property, which was so consumed, then, you will find for the plaintiff in such sum as you shall find from the evidence has proved to have been the value thereof at the time of its destruction by fire." The second instruction given on request of the plaintiff was even stronger in favor of the plaintiff than the foregoing one. Its purport is that the jury should find for the plaintiff if the grass growing on the right of way was fired by clinkers thrown from the engine, and such fire was communicated to the property of the plaintiff, without negligence on the part of the defendant. When these instructions are considered together there does not appear a possibility that the jury were misled by the instruction objected to, into ignoring the evidence relating to the communication of fire to the grass growing on the right of way or to the competency of the employees operating the engine.

The eleventh, twelfth, fourteenth, fifteenth and eighteenth assignments are based on instructions given at the request of the defendant. The objections to these instructions are similar to those considered under the tenth assignment, and it would simply add to the bulk

of this opinion to reiterate what we have said. We discover no reversible error under either of them, construed as they must be, in connection with the other instructions.

The thirteenth assignment of error is based on the following instruction given at the request of the defendant: "A railroad company is only required to use ordinary care and diligence, such as prudent men skilled in the business would ordinarily use in the particular case in question, to protect property on the line of their road from damage by reason of sparks escaping, or clinkers, from their locomotives. What constitutes negligence upon the part of the company with reference to a fire set out by sparks or clinkers from its engines, depends upon the circumstances of each particular case." This instruction is objected to on grounds which we discussed under other assignments, and also because it does not set forth with sufficient definiteness the degree of care required of the defendant in operating its trains at the point where the plaintiff's property was situated, near the railroad track. This instruction is identical in purport with the fourth instruction given at the request of the plaintiff in stating the duty of a railroad company to exercise ordinary care and caution in the operation of its trains so that the property of persons situated near or adjacent to the right of way shall not be damaged or destroyed. The plaintiff has no right to complain of this instruction.

The sixteenth assignment of error is based on the eighth instruction requested by the plaintiff, viz.: "The jury are not permitted to infer or presume for want of positive proof to the contrary that the fire was communicated by the operation of the railroad." It is contended that this instruction is argumentative, ignores the affirmative evi-

dence of the plaintiff tending to show the fire was set out by clinkers from the engine of defendant, and comprehends any character of fire which might have been set out by the operation of the railroad, and was misleading. We fail to see the force of these objections. The instruction states what we understand to be law in such a case, *viz.*: The burden of showing affirmatively in the first instance that the fire was caused by the defendant was on the plaintiff, and that this fact could not be presumed. It ignores no evidence, but simply furnishes a guide to the jury in considering the evidence.

The seventeenth assignment of error is based on the ninth instruction given at the request of the defendant, *viz.*: "If the jury should be satisfied from the evidence, that the fire did originate from sparks emitted, or clinkers, from defendant's engine, they would not be justified in finding a verdict for the plaintiff, if it should also appear from a preponderance of the evidence that the defendant did exercise all ordinary and reasonable care and diligence in the equipment and operation of its engines, and was not otherwise negligent."

The objections to this instruction are, first, that it is postulated upon evidence of sparks emitted from the engine which is wanting; second, that it is improper in raising the question as to the equipment of the engines of the defendant, when there is neither allegation nor proof of their defective equipment; third, that it excluded from the jury consideration of any evidence as to the fires starting in weeds and grass along defendant's right of way; fourth, it advises the jury that reasonable care in equipment and operation are absolute defenses to the action, whereas they only go to rebut the presumption created by the law, and create the necessity of the plaintiff's show-

ing actual negligence. A number of authorities are cited to sustain these contentions; among them, St. Johns & H. R. Co. v. Ransom, 33 Fla. 406, 14 South Rep. 892. There is no doubt of the correctness of the law laid down in this case. There is no doubt that it is the duty of a railroad company to keep its right of way adjacent to the property of others free from combustible material, and that it is liable for its neglect of such duty when it results in damage to others. The first two grounds of objection have been discussed under assignments on other instructions. As to the third ground of objection it does not seem to us that it is tenable. The last clause of the instruction expressly informs the jury that it was not meant to exclude from their consideration other negligence of the defendant than that therein specifically referred to, and so the fourth objection fails, because the instruction does not make reasonable care in equipment and operation of the engines absolute defenses to this action. This, it seems to us, becomes perfectly clear when this instruction is construed in connection with the first and second instructions given on behalf of the plaintiff, and discussed under the tenth assignment. The facts which existed in the case of St. Johns & H. R. Co. v. Ransom, supra, which was tried by a referee, are different from those in the case at bar, and both in the declaration and proofs was very much stronger against the railroad company.

The twenty-third and twenty-fourth assignments are based on instructions given at request of the defendant. It is contended that these instructions limited the jury in the assessment of damages, if they found for the plaintiff, to the net market value of the property destroyed, and excluded interest. Inasmuch as the verdict was for the

defendant, it is unnecessary to discuss these assignments.

The twenty-fifth assignment is based on the twenty-second instruction given at request of the defendant, *viz.*: "The declaration in this case does not allege that the fire destroying the lumber was caused by a fire spreading from burning crossties set on fire along the defendant's right of way; and, if you believe from the evidence that the origin of the fire destroying the lumber was the burning crossties, then you should find for the defendant." The objection to this instruction is that it was without foundation in the evidence and is misleading. There was a good deal said in the testimony about a pile of burning crossties in the vicinity of the lumber that was burned. It seems to have been the first impression that the fire which burned the lumber originated from this source. No one saw the fire spread from the railroad track to the lumber pile, and it is not easy to determine positively from the testimony that it did so. The blue print map filed in evidence by the defendant, without objection on the part of the plaintiff, shows that the burned district did not reach from the burned lumber pile to the right of way fence of the defendant. Some of the witnesses for the plaintiff state that the grass was burned all the way from the railroad track to the lumber pile. One of them (Mr. Stokes) states that the map was all right as to the burned district—he "guessed." Doubtless in this state of evidence this instruction was requested and given, out of the abundance of caution, so as to cause the jury to confine their investigation to the issues made by the pleadings. We discover no reversible error under this assignment.

The twenty-sixth assignment is based on the following

instruction given at the request of the defendant, *viz.*: "The court further instructs the jury that all persons erecting buildings or manufacturing establishments in the immediate vicinity of a railroad track, take and assume the risks of fire communicated from passing engines; *Provided,* Such engines are equipped with the best known appliances to prevent the escape of fire, and are kept in repair, and are managed with reasonable care and skill." The objections to this instruction besides those which have been discussed under other assignments are that the instruction is erroneous inasmuch as the proximity of the property of the plaintiff to the railroad is not negligence on the part of the plaintiff, but requires greater care by the defendant. The case of Jacksonville, T. & K. W. Ry. Co. v. Peninsular Land, Transp. & Manuf'g Co., 27 Fla. 1, 9 South. Rep. 661, is referred to as sustaining this contention. The instruction contains an abstract proposition of law, which as such and so far as it goes, it seems to us, is unobjectionable. Those who establish themselves in the neighborhood of railroads must know that trains are expected to run upon them, and if there are risks arising from no want of care in the proper equipment and management of engines and trains, those risks are not chargeable to the railroad, but are incidental to the situation. See cases cited in Jacksonville, T. & K. W. Ry. Co. v. Peninsular Land, Transp. & Manuf'g Co., *supra;* Toledo, Wabash & Western Ry. Co. v. Larmon, 67 Ill. 68, text 70. This instruction was immediately followed by one given by the court of its own motion, *viz.*: "The degree of care required to be used by a railroad company in the construction, equipment and operation of its locomotives, must be according to the circumstances, or in proportion to the danger; such care as is ordinarily suf-

ficient under similar circumstances to avoid danger and secure safety." The court had previously given the following instruction at the request of the plaintiff, viz.: "The court charges you that the law requires of railroads in the operation of their trains the exercise of ordinary care and caution so that the property of persons situated near or adjacent to their right of way shall not be damaged or destroyed by reason of the operation of such trains. Where such ordinary care is not exercised, and injury to the property of another is occasioned thereby, the plaintiff is entitled to recover for the value of the injuries sustained." Considered together these instructions do not mean that the plaintiff was guilty of negligence in placing his property near the railroad, nor do they obviate the necessity of proof of care on the part of the defendant proportionate to the circumstances. The question of what was, under the circumstances, ordinary care was properly left to the jury. 3 Elliott on Railroads, Sec. 1228.

The twenty-eighth assignment is based on the charge given by the court and mentioned above. The objections to it are that it is outside the issues made, that it excludes all evidence of negligence, and that it improperly defines the degree of care which was necessary with regard to clinkers. We think it unnecessary to say more than that, construed in connection with the other instructions and with the issues made by the declaration, it is not erroneous.

The twenty-ninth assignment of error is based on the action of the trial judge in re-reading to the jury, at their own request, the twenty-fifth instruction given at the request of the defendant. It is contended that the jury were unduly impressed by this giving undue prominence

to this instruction, which was itself an erroneous statement of the law. This instruction, as we have already said, states an abstract proposition of law, which, taken in connection with other instructions of a like kind, was not an erroneous presentation of the law. It is true that where the court instructs the jury upon what state of facts they must find a verdict for a party, the instruction should include all the facts in controversy, material to the rights of the plaintiff, or the defense of the defendant. 11 Ency. Pl. & Pr., 188. But this rule is not applicable to this instruction, nor to many others given in this case, where the same contention is made. There was no error in the judge's re-reading this instruction to the jury at their request. 11 Ency. Pl. & Pr., 287.

The thirtieth assignment is based on the action of the court in overruling the motion for a new trial. This assignment is submitted without argument, and we shall, therefore, treat it as abandoned. Thomas v. State, 36 Fla., 109, 18 South. Rep. 331; Charles v. State, 36 Fla. 691, 18 South. Rep. 369, and cases cited.

In conclusion we feel constrained to express our disapproval of the practice which we think is illustrated by the defendant's attorneys in this case and which is becoming common in Florida, *viz.*: That of requesting an unnecessarily large number of instructions to the jury. Besides the risk of error thereby created—for it is almost impossible for a trial judge to give a critical examination to a multitude of instructions—they are calculated to mislead and confuse a jury, and impose upon a reviewing court an unnecessary burden. It is either obliged to spin

out its opinions to a wearisome length, or abbreviate in
such a manner as to be subject to the criticisms of having
overlooked the issues.  11 Ency. Pl. & Pr., 150.

The judgment of the lower court is affirmed.

TAYLOR and PARKHILL, JJ., concur;

SHACKLEFORD, C. J., COCKRELL and WHITFIELD, JJ., con-
cur in the opinion.