## BRINKMAN ET AL. *v.* PACHOLKE.

[No. 6,133.   Filed May 15, 1908.]

1. HIGHWAYS.—*Use of, for Automobiles.*—The use of automobiles upon the streets and highways is lawful.   p. 666.

2. NEGLIGENCE.—*Use of Automobiles.*—*Care.*—The use of automobiles upon the streets or highways is governed by the general rule that the driver or owner must so use same as not to injure others.   p. 666.

3. HIGHWAYS.—*Automobiles.*—*Speed.*—*Statutes.*—The speed and care required in the operation of automobiles are regulated by statute (§10465 Burns 1908, Acts 1907, p. 558, §1).   p. 666.

4. NEGLIGENCE.—*Use of Automobiles.*—An automobilist who knowingly drives his machine past a frightened horse and thereby causes such horse to run away and to injure its driver, is liable for such injuries.   p. 667.

5. TRIAL.—*Allegations of Complaint.*—*Proof of.*—In an action for damages caused by defendants' negligence in the use of their automobile, it is not necessary for the proof to show that the automobile was as large as it was alleged to be, substantial proof of the material allegations only being required.   p. 668.

6. EVIDENCE.—*Exclusion of.—Offer of Proof.*—In order to present any question upon the exclusion of evidence, the complaining party must make an offer of the proof sought to be introduced. p. 668.

7. SAME.—*Conclusions.—Striking Out.—Harmless Error.*—It is a harmless error, in an action for damages against an automobilist for frightening plaintiff's horse and causing it to run away and to injure plaintiff, to strike out an answer showing that plaintiff had his horse "under control" when the automobile came alongside of the plaintiff's buggy, where the witness afterward testified that at such time the plaintiff's horse was "a little scared," was "running like any other horse that was scared," and that plaintiff was "holding the lines." p. 668.

8. TRIAL.—*Instructions.—Harmless.—Interrogatories.*—An instruction as to the liability of an automobilist for damages on the theory that he had time to slacken the speed of his machine after knowledge of the plaintiff's danger, and did not do so, is harmless, where the answers to the interrogatories to the jury show that such automobilist increased his speed after such knowledge. p. 669.

9. SAME.—*Instructions.—Invasion of Province of Jury.*—An instruction that if the jury "further find defendants' driver was far enough away to stop his" automobile and thus avoid injuring plaintiff, and he failed to do so, the plaintiff should recover, does not take the question of defendants' negligence from the jury, where the jury had been properly instructed that the burden of proof was upon the plaintiff to establish the allegations of his complaint. p. 670.

10. SAME.—*Instructions.—Contributory Negligence in Use of Defective Harness.*—An instruction omitting any mention of plaintiff's contributory negligence in the use of his harness, is not misleading, where such instruction was conditioned upon the proof of other elements of the case stated in other instructions, and one of such other instructions stated the necessary care required of plaintiff in furnishing proper harness. p. 670.

11. SAME.—*Instructions.—Automobiles.—Speed.—Care.*—It is not erroneous for the trial court, in an automobile negligence case, to instruct as to the consideration to be given to the fact of speed, if found to be less than the statutory rate, where the instruction further outlines the duty of the automobilist to use proper care, under the circumstances, in passing plaintiff's buggy. p. 670.

12. SAME.—*Instructions.—Using Due Care.*—An instruction, in an automobile negligence case, stating that if plaintiff was driving along the road and "using due care for his own safety," is not bad for failing to define the meaning of "due care," where other instructions were given defining negligence and contributory negligence, and the care required from plaintiff. p. 671.

13. TRIAL.—*Instructions.*—*How Considered.*—Instructions must be considered as a whole. p. 671.

14. SAME.—*Instructions.*—*Automobiles.*—*Contributory Negligence.* —*Care of Harness.*—An instruction, in an automobile negligence case, relating to the fact, if found, that the tugs of plaintiff's harness became detached from his buggy, is properly refused, where no reference was made as to plaintiff's negligence in connection with their attachment thereto. p. 671.

15. SAME.—*Duplication of.*—It is not erroneous to refuse to give an instruction already covered by instructions given. p. 672.

From St. Joseph Circuit Court; *Walter A. Funk,* Judge.

Action by Gustave Pacholke against William Brinkman and another. From a judgment on a verdict for plaintiff for $3,000, defendants appeal. *Affirmed.*

*James F. Gallaher,* for appellants.

*Sutherland & Smith, F. J. L. Meyer* and *Charles P. Drummond,* for appellee.

MYERS, J.—This action, commenced in the Laporte Circuit Court, whence the venue was changed to the court below, was brought by the appellee against appellants to recover damages for a personal injury alleged to have been caused by the negligence of appellants. A complaint in one paragraph, answered by a general denial, formed the issue submitted to a jury, resulting in a verdict and judgment in favor of appellee.

The only error assigned is based upon the ruling of the court in overruling appellant's motion for a new trial.

The complaint showed, in substance, that on June 1, 1905, appellants were running and operating along a public highway in Laporte county a certain automobile, describing its size, propelled by an exploding gasoline engine, which made a great noise and emitted smoke; that said automobile was provided with a horn, operated by a rubber bulb, which, when blown, gave a loud, coarse and alarming noise; that the automobile, when being so operated and while being so run, gave forth a loud, whirring and puffing noise that could be heard for several hundred yards; that the appellee, with

his daughter ten years old, was traveling in a buggy drawn by one horse along said highway from Michigan City to his home in Laporte county; that the horse was gentle and well broken, and was accustomed to seeing and meeting automobiles when driven along the highway; that while appellee was so driving along the highway, with all due care and caution, the appellants, in charge of said automobile, came up from behind appellee at a place where the highway, for a distance of about twelve rods to a cross-highway, was about twelve feet in width, with a ditch on each side with precipitous banks; that the highway for said distance was so narrow that when appellants attempted to pass along the side of appellee's horse and buggy they came near running into them; that appellants at that time were driving said automobile at great speed, to wit, twenty miles an hour, thereby causing it to give forth a loud, whirring and puffing noise, and while so approaching, and when within a distance of five rods from appellee, appellants caused said horn to be continuously blown, giving forth a loud, coarse and alarming noise, as heretofore described, which noises from the engine and horn greatly frightened appellee's horse, which immediately became unmanageable and started to run away, whereupon the appellee immediately called out to appellants to stop; that appellants could see plainly, and did see from the conduct of the horse, that he was greatly frightened and was becoming unmanageable, and could have stopped their automobile at that time before it reached and came up alongside of the appellee, and could have given the appellee time to reach said cross-highway and to escape and to avoid injury, which he was endeavoring to do; but the appellants, wholly disregarding appellee's entreaties to stop, which they heard, and the frightened condition of appellee's horse, negligently, wantonly and insolently continued to approach with their said automobile upon appellee and his horse at a reckless speed and in the reckless and negligent manner aforesaid, and negligently and

recklessly continued to sound the horn and to cause said machine to give off a loud, whirring, buzzing and puffing noise and explosions, while so approaching, until they came up alongside of appellee, when his horse became so frenzied with fright, caused by the close contact, the rapid speed, the loud tooting of the horn, the appearance of the machine, and the alarming noises given forth by it, that it became unmanageable and beyond the control of the appellee and ran away and plunged into said ditch at the side of the highway, throwing appellee violently to the ground, etc. His injuries, which occasioned the amputation of one of his legs, are described and damages alleged.

Appellants first insist that the evidence failed to sustain the verdict. It can no longer be questioned that the use of automobiles or motor cars, such as the one here in 1. question, upon streets and other public highways, is lawful. Such vehicles furnish a convenient and useful mode of travel and transportation not incompatible with the proper use of the highway by others; but in consequence of the great speed with which they may be run, their size and general appearance, the noises made in their use, the infrequency of their use in particular localities, and the circumstances of the particular occasions of their use, commensurate care, skill and diligence must be required of the persons employing such means of transportation. The general rule applies that he must so use his own as not 2. to injure another. Automobiles may be used with safety to other users of the highway, and in their proper use upon the highways their owners have equal rights with the users of other vehicles properly upon the highway. The law recognizes such right of use upon general 3. principles, and at the time of the appellee's injury the right was expressly recognized by statute. *Indiana Springs Co.* v. *Brown* (1905), 165 Ind. 465, 1 L. R. A. (N. S.) 238; *McIntyre* v. *Orner* (1906), 166 Ind. 57, 4 L. R. A. (N. S.) 1130, 117 Am. St. 359; Acts 1907, p. 558, §1,

§10465 Burns 1908.   The statute just cited forbids the operation of such vehicles on any public highway or in any public place "at any rate of speed greater than is reasonable and proper, having regard to the use in common of such highway or place, or so as to endanger the life or limb of any person, and in no event shall such motor vehicle be operated at a greater rate of speed than   *   *   *   twenty (20) miles an hour outside   *.   *   *   municipalities."   The statute in all its provisions, while recognizing the rightfulness of such vehicles in common with other vehicles on public highways, recognizes also the liability of horses to become frightened at their approach, and the need and the duty of using the same with skill and care in view of such conditions likely to arise.   In the case before us there

4.   was some evidence tending to show that both vehicles were going southward, and that the operator of the automobile commenced to sound the horn attached thereto when he was about three hundred feet behind the appellee's buggy.   Thereupon appellee's horse gave unmistakable evidence of fright, his movements being seen plainly by the occupants of the automobile.   Notwithstanding such indication of fright, the operator of the car caused it to advance, and attempted, while the horse was manifesting fright, to pass the appellee, thereby causing the horse to become more frightened and to rear and jump and run away, as described in the complaint.   There was also evidence from which the jury, with other facts, may have found that under the circumstances it would have been reasonably prudent for the operator of the car to give appellee an opportunity to reach the cross-road, a short distance in advance, where he might have turned his horse away from the cause of his fright, and not to seek to pass at the place where he overtook the appellee, and that, under the circumstances known to the operator of the car, he proceeded at a rate of speed greater than was reasonable and proper, having regard to the use in common of the highway and so as not to endanger the life and

limb of the appellee. It was not necessary to the appellee's recovery to prove that the car was as large as alleged in the complaint, or to prove various other statements in the pleading exactly as alleged. It was only necessary that the material allegations be proved. The jury and trial court passed upon the evidence, and, in view of the evidence disclosed by the record, we cannot say as a matter of law that the verdict was not sustained by sufficient evidence or was contrary to law. See *Chicago, etc., R. Co.* v. *Vandenberg* (1905), 164 Ind. 470; *Parmalee* v. *Kregelo* (1895), 143 Ind. 2; *Eacock* v. *State* (1907), 169 Ind. 488.

Considering the second reason argued for a new trial, it appears that on the direct examination of a witness for appellants, who was one of the occupants of the automobile, counsel for appellants asked, having reference to the appellee: "Did he get control of his horse?" The appellee's objection to the question was sustained. It is sufficient to say of this action of the court that the appellants made no offer stating what evidence it was expected to elicit in answer to this question. See *Gunder* v. *Tibbits* (1899), 153 Ind. 591; *Chicago, etc., R. Co.* v. *Linn* (1902), 30 Ind. App. 88; *Farmers, etc., Ins. Co.* v. *Yetter* (1902), 30 Ind. App. 187. The appellants failed for like reason to save for review the action of the court in sustaining appellee's objections to another question propounded to this witness. When asked what the horse did "when you came up alongside of it?" he answered: "He had him under his control." The appellee's motion to strike out this answer as being a conclusion was sustained. Whether this action of the court was proper in any event, it cannot be regarded as having injuriously affected the appellants, because, if erroneous, the ruling was rendered harmless by the answers of the witness to questions propounded by counsel for appellants as follows: "Q. When the automobile first came up alongside the horse and buggy what was the horse doing? A. When the automobile

came aside the horse? Attorney. Yes. Witness. The horse was a little scared. Q. What was he doing? A. He was running like any other horse that was scared, and not that he was jumping. I did not say the horse would be jumping. Q. What was Pacholke doing? A. Holding the lines.'' Thus, by the answers just given, substantially the facts sought to be elicited, and by the court excluded, were obtained, thereby indicating to the jury the degree of control which the appellee had over his horse.

Appellants also insist that the court erred in giving to the jury over their objection instructions two, three, five and six asked by appellee, and in refusing to give instructions eleven and twelve asked by appellants.

Referring to the instructions asked by appellee and given by the court, the second instruction contained the expression, ''and [if] you further find defendants' driver was far enough away to stop his machine and thus to avoid injuring plaintiff,'' etc., to which objection is made, on the ground that it involves the assumption that the defendants' driver injured appellee, and ''tended to prejudice the jury against the defendants, since it treats as established that which the jury were to decide.'' Looking to the answers of the jury to the interrogatories, it will be seen that, at the time the horn was sounded to signal to appellee the approach of the automobile, the appellee was driving at the rate of eight miles an hour and the automobile was running fifteen miles an hour, and it did not slacken its speed after the horn was sounded and before it reached the appellee's buggy, and was running at the rate of twenty miles an hour at the time it reached the side of the buggy. Therefore, the instruction did not deprive appellants of any advantage because of the want of a proper reference therein to the slackening of speed. The subject of the speed was presented in another instruction. The special object of this instruction was the matter of the failure of appellee to signal the driver of the automobile to stop, and to point out cir-

cumstances under which such failure ''would not excuse such driver in going forward and further frightening plaintiff's horse, if you find he did go forward and further frighten said horse.''

In view of the plain statement elsewhere in the instructions that the burden was upon the appellee to establish the material allegations of his complaint by a preponderance of the evidence (*Morgan* v. *Hoadley* [1901], 156 Ind. 320), it cannot be supposed that the jury would regard the decision of the question as to appellee's injury, by the negligence of the appellants, as having been taken from them by this instruction.

9.

It is objected that the third instruction omitted ''the elements of contributory negligence on the part of the plaintiff in using an unsafe harness.'' What was said in this instruction was therein expressly made subject to the jury's finding ''the other elements of the case made out by the evidence under other instructions given you.'' In another instruction given at the request of the appellants, the jury was told that the care required of the appellee ''applies to the buggy, harness and the horse, as well as to his conduct in driving, and if you should find from the evidence that in any of these matters the plaintiff failed to exercise such care as an ordinarily prudent man would have exercised, and that the want of such care contributed in any degree to plaintiff's injury, then the plaintiff cannot recover.''

10.

The fifth instruction, given at the instance of appellee, is criticised by appellants as singling out and discrediting a particular point in the evidence in their behalf. The statute cited provided that ''in no event shall such motor vehicle be operated'' at a rate of speed more than twenty miles an hour outside of municipalities. It was not erroneous for the court to state, as it did in this instruction, the proper consideration to be given by the jury to the fact alone, if found, that the driver did not propel the auto-

11.

mobile at a rate of speed exceeding twenty miles an hour, when it approached appellee's horse, explaining, in the same connection, correctly the duty of care and caution devolving upon the driver of the machine.

The sixth instruction began: "If you find from the evidence that plaintiff's horse became frightened at the automobile while plaintiff was driving along the public road and using due care for his own safety," etc.

Counsel objected on the ground that this instruction neglects to inform the jury what is meant by due care, or what measure of care the law requires of the plaintiff, and does not state that the care required of him must be continually exercised up to the time of his injury. Taken in connection with other instructions given, which fully defined negligence and contributory negligence, and the character of the care required of appellee, the jury could not have been misled by the expression so criticised. The rule is that instructions must be considered as a whole. *Cleveland, etc., R. Co.* v. *Penketh* (1901), 27 Ind. App. 210; *Bowman* v. *Bowman* (1899), 153 Ind. 498.

The eleventh instruction, asked by appellants and refused, related to the fact, if found, that the tugs of the harness which appellee was using became detached from his buggy and were broken, or that one of them became detached or broken by reason of the jumping of the horse when he became frightened by the tooting of the horn. It was specially found by the jury that one or both of the tugs did not become unhitched from the buggy or broken as soon as the horse started to run away. If this special fact cannot be said to negative the existence of the supposed fact on which the instruction was predicated, yet it must be said that the instruction was faulty, for the reason that it wholly left out of consideration the question of negligence on the part of appellee with reference to the tugs or their attachment to the buggy.

The matter of the twelfth instruction, asked by appellants

and refused, relating to the condition of appellee's harness and buggy, was sufficiently covered by the tenth instruction asked by the appellants and given, and therefore the refusal to give the one under consideration would not be reversible error. We find no reversible error.

Judgment affirmed.

Roby, C. J., absent.