JESSE B. HACKNEY, PLAINTIFF, PLAINTIFF IN ERROR, v. WEST JERSEY AND SEASHORE RAILROAD COMPANY, DEFENDANT, DEFENDANT IN ERROR.

Argued June Term, 1909—Decided November 15, 1909.

Plaintiff was driving alongside of a trolley track, a wagon load of brush about fourteen feet wide, ten feet long and six feet above the plaintiff's head. His wagon was closely followed by another wagon similarly loaded. The brush was so placed as to prevent plaintiff, from the place he was seated, from seeing behind him or on either side of him. After stopping to listen for a signal he, without changing his position so that he could see behind him, turned his team to pass over a crossing across a trolley track, and his horses were struck by a car which was approaching closely behind his wagon. *Held*, that plaintiff was guilty of contributory negligence.

On error to the Supreme Court.

For the plaintiff in error, *John W. Wescott.*

For the defendant in error, *Bourgeois & Sooy.*

The opinion of the court was delivered by

Reed, J.    This writ brings up a judgment upon a verdict for the defendant in error, directed by the trial court.

The facts appearing upon the trial are these: Mr. Hackney, the plaintiff, on November 17th, 1906, between nine and ten o'clock in the forenoon, was driving along Atlantic avenue, in Atlantic City, a team attached to a wagon loaded with brush. The brush was loaded on shelvings, and the plaintiff was sitting on a seat supported by the shelvings on the front of

the wagon, about midway between the sides. The load of brush was about twelve to fourteen feet wide, sixteen feet long and six feet above the head of the driver. The plaintiff says: "The brush was right up abreast of me." Some of the limbs extended two, three or four feet where they went over in front of him.

Thus embowered, he drove southerly down the avenue toward Ventnor, driving on the right hand side of defendant's double trolley tracks which lie on Atlantic avenue. He drove on until he reached a cross street known as Frankford avenue. At that point he wished to cross over the trolley tracks so as to be able to proceed with his load down to the beach. He attempted to cross the tracks at this Frankford avenue crossing, and in the attempt was struck by a trolley car and his horses were killed.

This crossing of the railroad track, plaintiff says, is about ten or twelve feet in length. From what appears in other parts of the testimony he evidently meant that it was a plank crossing ten or twelve feet wide. Plaintiff says that on approaching this crossing he had to drive out near the curb so that in starting to make the turn toward the crossing he could make the curve as long as possible, and thus bring the hind wheels of his long-geared wagon in upon the crossing. He says he "stopped his team before he entered the track to see if he could see anything, and that he couldn't see nothing. so he spoke to his horses and they went on, and as he entered the track the trolley struck him." He also says the trolley gave no whistle, bell or warning.

Respecting the conduct of the motorman who was driving the colliding car there was testimony from which the jury could have inferred negligence. It is in testimony that when the car was approaching the crossing the attention of the motorman was not directed to the track over which his car was about to pass, but that he was looking down. One witness, a carpenter who was working upon a building about two hundred feet from the crossing, says he noticed the team of the plaintiff as he started toward the track, and also noticed the conductor—obviously meaning the motorman—and he seemed

to be preoccupied with some of the mechanism of the car, as he supposed, and as he got directly opposite the hind part of plaintiff's wagon, he suddenly raised his head and threw the brake on, but the momentum of the car was such that she slid on and upset the wagon.

Another witness, who was driving a wagon, also loaded with brush, behind the plaintiff's wagon, says that just before reaching the crossing the motorman stood with his head down, looking down at the floor.

This testimony was uncontradicted, and it does not appear what diverted the attention of the motorman from the track in front of him. It does appear that his attention was so diverted.

Whether the plaintiff's wagon might have been seen by the motorman, in spite of the other wagon similarly loaded, which was following the plaintiff's, was a question for the jury. If he could have seen, then the question whether he should have anticipated the possibility of the plaintiff's turning across the track (as any driver had a right to cross the track at that point) and so have had his car under control, was also a question for the jury. So we think the direction of the verdict cannot be vindicated upon the ground that the defendant's servants were conclusively free from negligence.

The question then is whether the plaintiff himself was so clearly negligent, and whether his negligence so contributed to the accident that the court properly directed a verdict against him upon that ground.

It is manifest that the plaintiff did not look for a car coming from the direction of the colliding car, for he could not look in that direction at all. He had placed himself in a position where it was impossible for him to look in that direction. The brush on both sides of him, and over him, cut off all possibility of observation in that direction. His words are: "I could not see nothing on the side of me or behind me; it (the brush) was right up abreast of me. It was right up there six feet high above my head from the seat I sat on." He says that some of the limbs of the brush extended two to four feet where they went from him. It thus appears that he

was incapable of looking in any direction save directly in front of him. For the purpose of observation behind, or on either side of him, he was as helpless as if he had been blindfolded.

It is to be observed, as already stated, that he was not driving 'on a cross street, and directly across the railway track, but was driving alongside of the railway track. Directly behind him was another wagon similarly loaded. When he turned in on the track it is obvious that the car was close upon him, as the horses, and not the wagon, were struck.

The query then is whether the driver of a vehicle who puts himself in such a situation can drive blindfolded across a trolley track, with no assurance that the track is clear for a safe distance save that he hears no signal.

The rule in regard to pedestrians crossing a trolley track is that such person must use his power of observation to discover approaching vehicles, and if obstacles temporarily intervene so as to prevent observation, he must wait until the required observation can be made. *Newark Passenger Railway Co.* v. *Block,* 26 *Vroom* 605; *Jewett* v. *Paterson Railway Co.,* 33 *Id.* 424; *Fitzhenry* v. *Consolidated Traction Co.,* 35 *Id.* 674; *McGrath* v. *North Jersey Street Railway Co.,* 37 *Id.* 312; *Hageman* v. *North Jersey Street Railway Co.,* 45 *Id.* 279; *affirmed,* 46 *Id.* 935; *Eagen* v. *Jersey City, &c., Railway,* 45 *Id.* 699; *Shuler* v. *North Jersey Street Railway Co.,* 46 *Id.* 824.

In several of the cited cases it was held that the failure to conform to this requirement of observation by the pedestrian was a ground for nonsuit or direction of verdict.

While this is a settled rule respecting the duties of a pedestrian crossing a trolley track, it has been said that it is not *per se* negligence for a driver of a vehicle not to look for a trolley car before crossing a street railway.

In no case, however, has it been held that in no situation is it negligence *per se* for the driver of a vehicle to attempt to cross without looking. The rule is that the driver of a vehicle, as well as a pedestrian, must take reasonable care to avoid a collision before attempting to cross a trolley track. While the

facilities for observation may be greater in the case of a pedestrian than in the case of a driver of a vehicle, yet the rule of a reasonable care applies equally to both.

When the failure to look in the driver of a vehicle is manifestly negligence, that driver is guilty of contributory negligence. *McHugh* v. *North Jersey Street Railway Co.*, 46 *Atl. Rep.* 782; *Hannon* v. *North Jersey Street Railway Co.*, 36 *Vroom* 547.

In *Denis* v. *Lewiston, B. and B. Street Railway Co.*, 104 *Me.* 39, a wagon driven by the plaintiff was struck by a trolley car. The Supreme Court of Maine said that while it was true that the rule of looking and listening had been held in that court not to be applicable to street railways, yet the driver is bound to exercise all reasonable care, and, in exercising this care, he may be required in many situations to look and listen. It was held in that case that the plaintiff, in not looking, was guilty of contributory negligence, and a new trial was directed.

In the case of *Shiles* v. *Public Service Corp.*, 48 *Vroom* 600, where the plaintiff, in looking through a small window in the back of his wagon to see if a trolley car was approaching, failed to see a rapidly approaching car, and by reason of such failure drove upon the trolley track, where he was struck, it was held that the question of plaintiff's negligence was for the jury.

So in *Migans* v. *Jersey City H. and P. Street Railway Co.*, 47 *Vroom* 535, the plaintiff did look and saw a car one hundred and thirty feet away, moving slowly, with the motorman looking directly toward the plaintiff, it was held that plaintiff's negligence was a question for the jury.

In neither of these cases, however, was it suggested that had the respective plaintiffs failed to look at all, he would not have been guilty of contributory negligence.

In the present case the plaintiff, by the adjustment of his load and of his seat, had so placed himself that he could not look, and so did not look; and he took no pains to change his position and relieve himself from his condition of blindness so that observation would be effectual before driving

across the track. In doing this he was guilty of manifest negligence which contributed to the accident.

The judgment of the Supreme Court should be affirmed.

*For affirmance*—THE CHIEF JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, BERGEN, VOORHEES, VREDENBURGH, VROOM, DILL, CONGDON, JJ.　11.

*For reversal*—PARKER, MINTURN, BOGERT, JJ.　3.