THE FLORIDA EAST COAST RAILWAY COMPANY, A CORPORA-
TION, *Plaintiff in Error,* v. FULTON F. SMITH, *Defend-.
ant in Error.*

1. An affidavit for a continuance of a case because of the ab-
   sence of a witness is fatally defective when it fails to state
   that the plaintiff cannot prove the same matters by any other
   witness.

2. Under the provisions of section 3149 of the General Statutes
   of 1906, a defendant railroad company is entitled to submit
   to the jury under proper instructions, the question whether
   the injury to plaintiff's property was caused by his own neg-
   ligence.

3. Instructions to the jury should be confined to the evidence of
   the case.

4. While contributory negligence as a defense to an action in
   tort should be pleaded and proven, yet, where it appears from
   the proofs of the plaintiff without objection, the defendant
   may avail itself of the same under the general issue.

5. While the rule that in actions to recover damages caused by
   the negligence of the defendant, negligence on the part of the
   plaintiff which directly contributed to the occurrence which
   caused the damage will defeat the plaintiff's action is univer-
   sal, unless a different rule be prescribed by statute, a dif-
   ferent rule has been prescribed in this State, by section 3149
   of the General Statutes, whereby, in suits against a railroad
   company for injury to the plaintiff or his property, if the
   plaintiff and the agents of the company are both at fault, the
   former may recover, but the damages shall be diminished or
   increased by the jury in proportion to the amount of default
   attributable to him.

6. The provisions of section 3149 of the General Statutes of
   1906, relating to contributory negligence or apportionment of
   damages therefor, only apply to damages for injury to the
   plaintiff or to his *property.* If a plaintiff is guilty of contribu-
   tory negligence, he cannot recover loss of profits arising out

of his inability to fill orders by reason of the burning of his mill by the negligence of a railroad company.

7. The manner of constructing buildings within a few feet of a railroad track, where trains and engines necessarily pass and repass, including the materials of which such buildings are constructed, and the manner of their use after construction, are matters upon which negligence may be predicated.

8. Although a mill may have been negligently set on fire by sparks from a locomotive, it becomes the duty of the owner of the property, after discovering the fire, to exercise due care by using reasonable means to extinguish the fire and to protect his property. Where the danger is not seen but anticipated merely, or dependent on future events, the owner of the property is not bound to guard against the negligence of the servants of a railroad company by refraining from his usual course, being otherwise a prudent one, in the management of his property; but when in the presence of a seen danger, as when the fire has been set, he omits to do what prudence requires to be done under the circumstances for the protection of his property, or does some act inconsistent with its preservation, he fails in his duty and negligence may be predicated upon it.

9. Whether the owner of property who makes efforts to put out or stay the progress of a fire negligently started have used due care in this respect is ordinarily a question for the jury.

10. An instruction is erroneous when it makes the owner of property negligently set on fire responsible for his failure to extinguish the same without reference to his ability to have done so by the exercise of due care by using reasonable means at his command.

11. An instruction is erroneous when it makes the wanton and intentional failure of the plaintiff to use due and reasonable care to extinguish a fire after the same is discovered the test of his contributory negligence therein.

12. After the plaintiff discovers a fire negligently set by a locomotive, it becomes his duty to exercise due care by using

reasonable means to extinguish the fire and to protect his property, and if he fails so to do he may recover for his subsequent loss, but the damages shall be diminished or increased in proportion to the amount of fault attributable to him.

13. A railroad company is liable for any damage done to property by the running of its locomotives unless the defendant company shall make it to appear that their agents have exercised all ordinary and reasonable care and diligence, the presumption in all cases being against the defendant company.

14. Where the fatal fire has been set out from a designated or known engine, it is admissible to introduce evidence of other fires previously set out by the same engine, but not by any other engine of the defendant company, as tending to prove its defective construction or condition, or improper management. If the engine charged with the fire is not identified, the plaintiff may show that other engines of the defendant emitted sparks and set out fires at or about the time either before or after the burning of the property complained of, as tending to prove the possibility and consequent probability that some locomotive of defendant company caused the fire, and as tending to show negligence in the construction and management of the engines.

This case was decided by Division B.

Writ of error to the Circuit Court for Volusia County.

The facts in the case are stated in the opinion of the court.

*Stewart & Bly,* for Plaintiff in Error;

*Landis & Fish,* for Defendant in Error.

PARKHILL, J.—The defendant in error sued the plaintiff

m error, in the circuit court for Volusia county, to recover for the burning of a certain planing mill and the contents thereof alleged to have been set on fire by a locomotive engine that the defendant company negligently failed to equip with appliances, instruments and spark arresters, and that by reason thereof the defendant's engine while passing by said planing mill was negligently permitted to emit an unnecessary quantity of sparks and coals of fire by means whereof fire was communicated thereto, and thereby the said planing mill building together with the contents thereof was totally burned. The plaintiff claimed as special damages certain profits that he lost by being unable to fill existing contracts for lumber, occasioned by the burning of the mill. The defendant filed a plea of not guilty and judgment was rendered on the verdict of the jury in favor of the plaintiff for $1992.00, and defendant sued out a writ of error.

We do not think the court erred in the exercise of its discretion in denying the motion for compulsory amendment of the declaration.

The court did not err in denying the motion for a continuance, because of the absence of F. L. Gardner a witness, the affidavit in support thereof being defective in that it failed to state that the plaintiff could not prove the same matters by any other witness. Livingston v. Cooper, 22 Fla., 292, text 294.

The plaintiff himself testified about the fire that caused the damages as follows:

"On the day of the burning, I was on the runway checking a load of lumber, and the passenger train came by. Bob McCracklin, my man, was loading it and I was checking it. It was very near loaded. The train was coming and a cinder struck me in the eye, and I said 'hold on, Bob, and stop a minute until I get this cinder out.' By that

time the train was by, and he finished loading his wagon, and I told him to go ahead; I had his load check up and to go ahead. The driver went around the planing mill with his load—road went around the planing mill and around my house. I was coming down with the runway and had come down, and my wife was there, and we were walking up around the planing mill, and Bob hollowed that he smelled something burning, and he jumped off the wagon and run back to the planing mill and said, 'your canvas is on fire, and that train has set the canvas on fire.' He called me back there, and he and my wife and I grabbed a can and put it out. The canvas was over the planer to keep my belts and things dry. * * * The fire was burning here on the table. The table comes here on the planer and then the planer goes up high, and the canvas caught fire on the table, about a foot and a half had burned in diameter when we got there and put it out. After we had put it out, Bob got on his wagon and went on and me and my wife went to the blacksmith shop."

They had been in the shop something like five minutes, when he said to his wife, "Lord a mercy, a fire has caught again." She and he ran to the mill. The fire was just getting in good headway. The witness said, "I took my pocket knife and cut the belt and started to get the belt as it fell, and a gush of wind came and it burned my hair and eye brows. The entire planing mill burned down. * * The canvas over the plant was an old duck tent. We put it out, as we thought, and did not examine carefully for further fire. The fire must have dropped through and was smouldering in the shavings when we left it because we didn't dig in the shavings to get the cinders out. There were shavings and sawdust about the planer. The day before that I had been running some dry-kiln flooring, and had not cleaned up there because I

wasn't running the planing mill that day at all. The shavings were down around and under the planing mill, and under where the fire was. It was in these shavings but under the planer that fire started. We did not examine the shavings to see if any fire in them had caught from the canvas; I didn't think about getting down in the shavings. We just grabbed hold of the canvas and rubbed it right out, brushed it out. We knew the shavings were in there because they had been left from the day before. We generally cleaned up when we got to it. They would run three or four days. I kept a team and cart hauling shavings away about as fast as we made them. We put them on the road generally, as a saw mill will do. We didn't clean up every day. We did not use any water in putting out the fire in the canvas; we put it out with our hands. * * * My wife and I and McCracklin put out the first fire. I am satisfied almost that I would have discovered the fire if I had examined the shavings. Of course I knew it had to come from there. It doesn't seem to be any doubt that the second fire was a continuation of the first fire. It was discovered in the same place, under the canvas and under the bed of the planer, and you would naturally suppose that was the fire."

The defendant introduced evidence tending to show that the engine was in perfect condition, properly operated, and equipped with the best spark arrester in common use by railroads; that it was a new and improved appliance, that it was properly inspected and was in first class condition, and as good as could be made; that the smokestack of the planing mill had no spark arrester; that the smokestack without a spark arrester is more dangerous in setting fire; that fire and large sparks had been seen coming out of the smokestack of the planing mill before the fire and a witness had seen holes and marks in the

roof of the planer that must have been caused by sparks from the smokestack, that "occasionally a small fire took place around the mill when the mill was running, that plaintiff had a fire in the saw mill boilers the day the planer was burned."

The defendant requested the court to give the following instruction:

"14. The court charges that before you can find for the plaintiff you must believe from the evidence that there was negligence on the part of the defendant either in the equipment or operation of such of its engines as might have caused the fire in question, and that such negligence was the proximate cause of the plaintiff's loss, and if you believe from the evidence that the plaintiff's loss was caused by his own negligence then you will find for the defendant."

The court erred in refusing to give this charge. Section 3149 of the General Statutes of 1906 provides: "No person shall recover damages from a railroad company for injury to himself or his property, where the same was done by his consent, or is caused by his own negligence." The defendant was entitled to submit, under this instruction, the question whether the plaintiff's loss was occasioned negligently by sparks from the smokestack of his own mill.

The court, at the plaintiff's request gave the following instruction:

"2. If you gentlemen of the jury believe from the evidence that the property of the plaintiff was burned in consequence of the failure of the defendant company to use the best appliances and safeguards in the nature of ash pans and spark arresters on their engines and such as are generally adopted by and used on the leading rail-

roads of this country, the defendants are liable for any loss occasioned by any such omission."

There was no evidence that the fire was due to a failure of the railroad company to use best ash pans. The evidence of the plaintiff showed that the fire was caused by a spark, and not from a coal of fire thrown out of an ash pan. The instruction should be confined to the evidence of the case, and without deciding that the violation of this rule in the charge given here is reversible error, the court should correct the same on another trial. Starke v. State, 49 Fla., 41, 37 South. Rep., 850; Pensacola Electric Terminal R. Co. v. Haussman, 51 Fla., 286, 40 South. Rep., 196.

The defendant requested certain charges on the effect of plaintiff's contributory negligence. While contributory negligence as a defense to an action in tort should be pleaded and proven by the defendant, yet where it appears from the proofs of the plaintiff as it does in the instant case without objection the defendant may avail itself of the same under the general issue. Atlantic Coast Line R. Co. v. McCormick, 59 Fla., 121, 52 South. Rep., 712.

The question of the contributory negligence of the plaintiff was fairly presented by the evidence and the defendant was entitled to have the jury correctly instructed thereon by the court.

The rule that in actions to recover damages caused by the negligence of the defendant, negligence on the part of the plaintiff which directly contributed to the occurrence which caused the damage will defeat the plaintiff's action is universal, unless a different rule be prescribed by statute. Murphy v. Chicago & N. W. R'y Co., 45 Wis., 222, 30 Am. Rep., 721; Yneistra v. L. & N. R. R. Co., 21 Fla., 700. A different rule has been prescribed by our

statute, Section 3149 of the General Statutes, whereby, "If the complainant and the agents of the (railroad) company are both at fault, the former may recover, but the damages shall be diminished or increased by the jury in proportion to the amount of default attributable to him."

As a general proposition it may be true, as the court below instructed the jury, the plaintiff was not bound to keep guard against the negligence of the defendant, but has a right to enjoy his property in the ordinary manner, and while he is charged with the duty of saving his property from destruction, if it can be saved, he is under no obligation to stand guard over it, continuously watching it to protect it from the negligence of the defendant, and the same is true of the charge that the fact that plaintiff's property was exposed to the reach of sparks of a locomotive engine is no defense to an action of this kind; and the plaintiff has the right to construct his buildings on any part of his property and to enjoy the same without rendering himself liable to the negligence of the defendant (Jacksonville, T. & K. W. Ry. Co. v. Peninsular Land, Transp. & Manuf'g Co., 27 Fla., 1, 9 South. Rep., 661); yet it is equally true that the manner of constructing such buildings within a few feet of a railroad track, as was done here, where trains and engines necessarily pass and repass, including the materials of which such buildings are constructed, and the manner of their use after construction, are matters upon which negligence may be predicated. Murphy v. Chicago & N. W. R'y Co., *supra*. And although the planing mill may have been negligently set on fire by sparks from the defendant's locomotive, it was the duty of the plaintiff, *after discovering the fire*, to exercise due care by using reasonable means to extinguish the fire and to protect his property. Where the danger is

not seen, but anticipated merely, or dependent on future events, the plaintiff, or owner of the property, is not bound to guard against defendant's negligence by refraining from his usual course, being otherwise a prudent one, in the management of his property; but when in the presence of a seen danger, as when the fire has been set, he omits to do what prudence requires to be done under the circumstances for the protection of his property or does some act inconsistent with its preservation he fails in his duty and negligence may be predicated upon it. Snyder v. P., C. & St. L. Railroad Co., 11 W. Va., 14; Kellog v. The Chicago and Northwestern Ry. Co., 26 Wis., 223.

Whether parties who make efforts to put out or stay the progress of a fire negligently started have used due care in this respect is ordinarily a question for the jury. Having fought and partially subdued the fire and then mistakenly supposed that the fire was extinguished and the danger was past made the matter of whether the plaintiff used reasonable care peculiarly one for the determination of the jury. St. Louis & San Francisco R. Co. v. League, 71 Kan., 79, 80 Pac. Rep., 46.

In the instant case it was peculiarly a question for the jury to consider whether the plaintiff was guilty of contributory negligence in using a canvas to cover his planer and to suffer an accumulation thereunder of shavings adjacent to the railroad where it is in constant danger of being ignited by sparks from a passing locomotive.

It became a question for the jury, also, whether, after discovering the presence of the fire in the canvas and knowing that the shavings were under the burning cloth, the plaintiff acted with prudence or due and reasonable care in putting out the fire and in the protection of his property. The plaintiff said, "we put it out, as we thought and did not examine carefully for further fire. The fire

must have dropped through and was smouldering in the shavings when we left it, because we didn't dig in the shavings and sawdust about that planer."

In St. Louis & San Francisco R. Co. v. League, *supra,* the court said, whether the plaintiff exercised care that a prudent person should in extinguishing the fire, in watching it after it was arrested, and in protecting their property against a rekindling or renewal of the fire was a question for the jury under proper instructions from the court.

In an action for injuries by fire to buildings adjacent to a railway, caused by negligent management or construction of the defendant's locomotives, it appeared that the plaintiff had suffered an accumulation of shavings between the buildings burned and under one of them which was placed on blocks with the sides next the railway open, the court, in Murphy v. Chicago & N. W. R'y Co., *supra,* held this was evidence of contributory negligence which should be submitted to the jury.

The court properly refused to give the following charge requested by the defendant: "The court charges you that although you might believe from the evidence that the fire found upon the canvas cloth over the planer originated from a spark from the engine of the defendant and yet you should find that the said plaintiff, Fulton F. Smith, discovered the fire in time to extinguish it and he failed to do so, you must find a verdict for the defendant."

And the following charge given by the court of its own motion, does not state the law correctly:

"2.  The court charges you that although you might believe from the evidence that the fire found upon the canvas cloth over the planer originated from a spark from the engine of the defendant and yet you should find that the said plaintiff, Fulton F. Smith, discovered the fire in

time to extinguish it and he wantonly and purposely failed to do so, you must find a verdict for the defendant."

The first of these instructions seems to make the plaintiff responsible for his failure to extinguish the fire under the circumstances stated if he failed to do so without reference to his ability to have extinguished the same by the exercise of due care by using reasonable means. The second instruction erroneously told the jury that the failure of the plaintiff to extinguish the fire must be *wanton and intentional,* whereas a failure by the plaintiff to use due and reasonable care to extinguish the fire after the same is discovered is the test of his contributory negligence.

Even with these qualifications, both charges would be erroneous in requiring the jury to find for the defendant. Under the old rule the contributory negligence of the plaintiff was a complete bar to recovery, but, under our statute, the injury being caused by the operation of a railroad locomotive, if both parties are at fault the plaintiff may recover, but the damages shall be diminished or increased by the jury in proportion to the amount of default attributable to him.

If the canvas cloth was set on fire by a spark negligently thrown from defendant's engine, and the plaintiff was without fault, he could recover for the damages to the canvas. If he was at fault the damages would be apportioned. *After the fire was discovered by the plaintiff* it was his duty to exercise due care by using reasonable means to extinguish the fire and to protect his property and if he failed so to do, he may recover for his subsequent loss, but the damages shall be diminished or increased in proportion to the amount of default attributable to him; because in such case both parties would be at fault, the railroad company through negligently setting the fire by a spark from the engine, and the defend-

ant by a failure to put the fire out, after its discovery, when by the exercise of due care by using reasonable means he could have done so.

The court did not err in giving this charge: "The court instructs you that the defendant railroad company is liable for any damage done to property by the running of its locomotives or cars or other machinery of such company or for damages done by any person in the employ or service of such company, unless the defendant company shall make it appear that their agents have exercised all ordinary and reasonable care and diligence, and the presumption in all cases is against the defendant." This is our statute, section 3148 of the General Statutes of 1906. See, also, Florida East Coast Ry. Co. v. Welch, 53 Fla., 145, 44 South. Rep., 250. Of course, the court might well have left out any reference to "other machinery of such company," because it is claimed the damage was done only by the running of the defendant's locomotive.

Where the fatal fire has been set out from a designated or known engine, it is admissible to introduce evidence of other fires previously set out by the same engine, but not by any other engine of the defendant company, as tending to prove its defective construction or condition, or improper management. Jacksonville, T. & K. W. Ry. Co. v. Peninsular Land, Transp. & Manuf'g Co., 27 Fla., 1, 9 South. Rep., 661. If the engine charged with the fire is not identified, the plaintiff may show that other engines of defendant emitted sparks and set out fires at or about the time either before or after the burning of this planing mill, as tending to prove the possibility and consequent probability that some locomotive of defendant company caused the fire complained of, and as tending to show negligence on the part of the defendant in the construc-

tion and management of its engines.   Florida East Coast
Ry. Co. v. Welch, *supra.*

The court, at the request of the plaintiff, gave the fol-
lowing instruction to the jury:

"12.   The court instructs you that if you find by the
preponderance of the evidence that the defendant railway
company did not use all ordinary and reasonable care and
diligence in the running of its trains, and by its failure to
use such care and diligence, did cause the planing
mill of the plaintiff, F. F. Smith, to be burned,
then you shall find a verdict for the plaintiff
and you shall fix his damages at such sum as the
said plaintiff shall have suffered by virtue of the burn-
ing of such planing mill.   And in addition thereto, you
shall find for the plaintiff such damages as he shall have
sustained by virtue of his failure to fill and supply what-
ever orders for lumber and manufactured materials he
had at the time of the burning of said mill.   The measure
of damages for the plaintiff's failure to fill his existing
orders being the amount of profit which the said plaintiff
would have made had he been able to complete and fill
those orders."

The court erred in giving this charge, for it failed to
take into account the effect of any contributory negli-
gence on the part of the plaintiff, and allowed the jury to
find for the plaintiff the sum he suffered by the burning
of the planing mill, if the defendant negligently caused
the planing mill to be burned, whereas the rule is that if
the plaintiff was at fault, also, he may recover, but,
as we have seen, the damages shall be diminished or in-
creased by the jury in proportion to the amount of default
attributable to him.

The instruction is incorrect, also, for the reason that, in
failing to take into account any contributory negligence

on the part of the plaintiff, the jury is instructed to find for the plaintiff, in addition to the loss suffered by the burning of the mill, "such damages as he shall have sustained by virtue of his failure to fill and supply whatever orders for lumber and manufactured materials he had at the time of the burning of said mill. The measure of damages for the plaintiff's failure to fill his existing orders being the amount of profit which the said plaintiff would have made had he been able to complete and fill those orders."

If the plaintiff was guilty of contributory negligence he could not recover any loss of profits arising out of his inability to fill the orders by reason of the burning of the mill. Our statute of contributory negligence, or of apportionment of damages therefor, only applies to damages for injury to the plaintiff or to his *property*. If the loss of the building has to be apportioned by reason of the contributory negligence of the plaintiff, there can be no recovery for loss of profits, because of the plaintiff's contributory negligence.

We think we have sufficiently considered such questions as may arise upon another trial. Our omission to consider others does not commit us to the correctness of instructions given by the court, and not thought necessary to be mentioned here.

The judgment is reversed.

TAYLOR and HOCKER, J. J., concur;

WHITFIELD, C. J., and SHACKLEFORD and COCKRELL, J. J., concur in the opinion.