J. J. FARNSWORTH, *Plaintiff in Error, v.* TAMPA ELECTRIC COMPANY, *a Corporation, Defendant in Error.*

1.  In an action brought against a railroad company by one seeking to recover damages for injuries, whether to his person or his property; alleged to have been occasioned by the negligence of the defendant, there can be no recovery if the evidence establishes the fact that the plaintiff's own negligence was the sole cause of the injury, and this may be shown under the general issue.

2.  Chapter 4071 of the Laws of Florida, Acts of 1891, P. 113, changed the common law rule in actions brought against

railroad companies in certain particulars therein set forth, and section 2 thereof, now Section 3149 of the General Statutes of 1906, provides that, if the plaintiff and the defendant company are both in fault, the plaintiff may recover, "but the damages shall be diminished or increased by the jury in proportion to the amount of default attributable to him." While contributory negligence as a defense in such an action should be pleaded, yet, where it appears from the proofs adduced by the plaintiff, the defendant company may avail itself of the same under the general issue.

3. Section 3148 of the General Statutes of 1906, creates the presumption that a person injured by the operation of a railroad was thus injured through the negligence of such road, which presumption it is incumbent upon the defendant railroad company, in an action brought against it, to overcome by proofs.

4. In any action seeking to recover damages for injuries to person or property, whether brought against a railroad company, in which action Section 3148 of the General Statutes of 1906 would apply, or against, some other defendant, alleged to have been caused by the negligence of the defendant, all that may properly be required of the plaintiff is to establish by competent evidence the negligence of the defendant in causing the injury, as laid in the declaration. The Plaintiff cannot be required to show that he was not guilty of contributory negligence, the burden is the other way, and if the evidence is evenly balanced the fact of contributory negligence is not established, and upon this issue the verdict should be for the plaintiff. The only difference in this respect in an action brought against a defendant who does not come within the class enumerated in such Section 3148, is that in such case the fact of injury is not made *prima facie* evidence of the negligence of the defendant.

5. To the jury is given the function of passing upon the credibility of the witnesses and the weight of the evidence, and it is error for the trial judge to usurp such function.

6. It is the duty of the trial judge to charge the jury upon the law of the case, and, since the jury must take the law from

the trial judge and be guided by his utterances, it is of the utmost importance that he should charge the law applicable to the issues being tried correctly.

7. Questions of negligence and of contributory negligence are for the jury to determine when the facts are controverted.

8. A charge or instruction should not impose either upon the plaintiff or defendant a duty not shown to exist.

9. Where there is evidence to sustain the verdict, and no material error of law or procedure appear, the judgment will be affirmed, but, where it appears that an erroneous charge could reasonably have misled or confused the jury to the injury of the party complaining of it, a new trial will be granted.

10. In an action against an electric railroad company, seeking to recover damages for injuries alleged to have been occasioned by the negligence of the defendant company, where an instruction is given which erroneously defines the duty of the plaintiff to such defendant company or imposes an unnecessary or improper burden upon the plaintiff, the judgment rendered in favor of such defendant company should be reversed, unless the evidence adduced was of such a character as would not reasonably have warranted any other than a verdict for the defendant company.

11. Contradictory charges or instructions should not be given, as their tendency necessarily is to confuse and mislead the jury.

12. Only such instructions should be requested by either the plaintiff or defendant as bear upon the law of the case and will aid the jury in trying and determining the issues, as unnecessary instructions afford opportunities for error, and are burdensome to the courts. When a large number of instructions are given, they are also well calculated to confuse and mislead the jury.

13. Owners and operators of automobiles have the same right to use the streets and highways that owners and operators

of other vehicles possess. All alike must exercise reasonable care and caution for the safety of others.

14. While the right of a street railway to that part of the street on which its tracks are laid is not an exclusive one, yet the rights are superior to those of the general public, except at street crossings, where the rights of both are equal.

15. The driver of a vehicle, whether automobile, carriage, wagon, or other kind, about to cross a street railway track at a street crossing in a city, is not in every case required as a matter of law to stop, look and listen.

This case was decided by Division A.

Writ of error to the Circuit Court for Hillsborough County.

The facts in the case are stated in the opinion of the court.

*V. H. Knight* and *H. S. Hampton,* for Plaintiff in Error;

*P. O. Knight,* for Defendant in Error.

SHACKLEFORD, J.—An action was brought by the plaintiff in error against the defendant in error to recover damages for personal injuries and for injury to the plaintiff's automobile, in which he was riding and which he was operating at the time, alleged to have been received as the result of the collision of one of the cars of the defendant with the automobile of the plaintiff, at the intersection of Marion and Scott streets in the City

of Tampa, which collision is alleged to have been caused by the negligence of the defendant.

The first error assigned is based upon the sustaining of a demurrer to the declaration, but, in view of the fact that the plaintiff filed an amended declaration, under 'which he could offer all the evidence admissible under the original declaration and no additional burden was thereby imposed on him, we must hold that the error, if any, in such ruling was harmless.

We consider it unnecessary to set out the pleadings. The defendant filed a plea of not guilty, and also two other pleas to which a demurrer was sustained. No plea of contributory negligence was filed. A trial was had, which resulted in a verdict and judgment in favor of the defendant. This judgment the plaintiff has brought here for review by writ of error and has assigned twenty-six errors. In view of the conclusion which we have reached, it becomes unnecessary to discuss these assignments in detail. We believe that the application of a few well-settled principles will enable us to make a proper disposition of the case.

In an action brought against a railroad company by one seeking to recover damages for injuries, whether to his person or his property, alleged to have been occasioned by the negligence of the defendant, there can be no recovery if the evidence establishes the fact that the plaintiff's own negligence was the sole cause of the injury, and this may be shown under the general issue. Atlantic Coast Line R. R. Co. v. Crosby, 53 Fla. 400, 43 South. Rep. 318, and Seaboard Air Line Ry. v. Rentz, 60 Fla. 449, 54 South. Rep. 20. Chapter 4071 of the Laws of Florida, Acts of 1891, p. 113, changed the common law rule in certain particulars that affect the result in this case. We have had occasion several times to construe

the different sections of this Chapter, so shall not go into any discussion thereof now. It is sufficient to say that section 2 thereof, which appears in the General Statutes of 1906 as section 3149, provides that, if the plaintiff and the defendant company are both in fault, the plaintiff may recover, "but the damages shall be diminished or increased by the jury in proportion to the amount of default attributable to him." See Atlantic Coast Line R. R. Co. v. Crosby *supra;* Atlantic Coast Line R. R. Co. v. McCormick, 59 Fla. 121, 52 South. Rep. 712; Florida East Coast Ry. Co. v. Smith, 61 Fla. 218, 55 South. Rep. 871. In the last cited case, following prior decisions, it was held, that, "while contributory negligence as a defense to an action in tort should be pleaded and proven, yet, where it appears from the proofs of the plaintiff without objection, the defendant may avail itself of the same under the general issue." Section 3148 of the General Statutes of 1906 creates the presumption that a person injured by the operation of a railroad was thus injured through the negligence of such road, which presumption it is incumbent upon the defendant railroad company, in an action brought against it, to overcome by proofs. Atlantic Coast Line R. R. Co. v. Crosby, *supra,* and Pensacola Electric Co. v. Bissett, 59 Fla. 360, 52 South. Rep. 367. It is also true that in any action seeking to recover damages for injuries to person or property, whether brought against a railroad company, in which action the above cited statute would apply, or against some other defendant, alleged to have been caused by the negligence of the defendant, all that may properly be required of the plaintiff is to establish by competent evidence the negligence of the defendant in causing the injury, as laid in the declaration. The plaintiff cannot be required to show that he was not guilty of contributory

negligence, such burden being cast upon the defendant. Not only is it not essential that the whole evidence convince the jury that the plaintiff was not guilty of contributory negligence, the burden is the other way, and if the evidence is evenly balanced the fact of contributory negligence is not established, and upon this issue the verdict should be for the plaintiff. Hainlin v. Budge, 56 Fla. 342, 47 South. Rep. 825. The only difference in this respect in an action brought against a defendant who does not come within the class enumerated in Section 3148 of the General Statutes of 1906 is that in such case the fact of the injury is not made *prima facie* evidence of the negligence of the defendant. See Pensacola Electric Co. v. Alexander, 58 Fla. 337, 50 South. Rep. 673, and Seaboard Air Line Ry. v. Smith, 53 Fla. 375, 43 South. Rep. 235, and cases there cited.

It is elementary that to the jury is given the function of passing upon the credibility of the witnesses and the weight of the evidence, and it is error for the trial judge to trench upon or usurp such function. See Garner v. State, 28 Fla. 113, 9 South. Rep. 835, 29 Amer. St. Rep. 232, and Roberson v. State, 40 Fla. 509, 24 South. Rep. 474. Section 1496 of the General Statutes of 1906, which we have several times construed, provides as follows:

"1496. (1088) Duty of judge to charge jury.—Upon the trial of all cases at law in the several courts of this State, the Judge presiding on such trial shall charge the jury only upon the law of the case; that is, upon some point or points of law arising in the trial of said cause.

If, however, upon the conclusion of the argument of counsel in any civil case, after all the evidence shall have been submitted, it be apparent to the judge of the Circuit court, or county court, that no evidence has been submitted upon which the jury could lawfully find a ver-

dict for one party, the judge may direct the jury to find a verdict for the opposite party."

Although it may have been true in England at one time, as the old couplet has it:

"For twelve honest men have decided the cause
Who are judges alike of the facts and the laws;"

Lord Mansfield's variant of the second line,

"Who are judges of facts, but not judges of laws," describes the situation as it has always existed in this State. This court has carefully guarded these respective functions of the trial judge and the jury, as a glance through its decisions will readily show. Since the jury must take the law from the trial judge and be guided by his utterances, it is of the utmost importance that the trial judge should charge the law applicable to the issues being tried correctly. We have also repeatedly held that questions of negligence and of contributory negligence are for the jury to determine when the facts are controverted, as in the instant case. See German-American Lumber Co. v. Brock, 55 Fla. 577, 46 South. Rep. 740. We have also held that "A charge should not impose upon a defendant a duty not shown to exist." Escambia County Electric Light & P. Co. v. Sutherland, 61 Fla. 167, 55 South. Rep. 83. It necessarily follows that neither should a charge impose upon a plaintiff a duty not shown to exist. We have also repeatedly held that "where there is evidence to sustain the verdict, and no material errors of law or procedure appear, the judgment will be affirmed." Seaboard Air Line Ry. v. Moseley, 60 Fla. 186, 53 South. Rep. 718. We have likewise held that "Where it appears that an erroneous charge could reasonably have misled or confused the jury to the injury of the party complain-

ing of it, a new trial will be granted." Atlantic Coast Line R. R. Co. v. Wallace, 61 Fla. 93, 54 South. Rep. 893. We held that, "Where an error has been committed in defining the duty of a defendant electric company to its patrons to be harmless to the defendant, the evidence must be of such a character as would not reasonably have warranted any other than a verdict for the plaintiff." Escambia County Electric Light & Power Co. v. Sutherland, *supra.* The principle is likewise applicable in an action against an electric railroad company, seeking to recover damages for injuries alleged to have been occasioned by the negligence of the defendant company, where an instruction is given which erroneously defines the duty of the plaintiff to such defendant company or imposes an unnecessary or improper burden upon the plaintiff.

We have given all the evidence adduced our careful examination, but it would not be proper for us to express an opinion thereon, in view of the fact that we have reached the conclusion that the judgment must be reversed for certain errors which were committed by the trial judge in his instructions to the jury. It is sufficient for us to say that, as is usually true in these negligence cases, upon a number of points the evidence is conflicting, therefore we are unable to declare that the erroneous instructions, some of which we shall set out, were hearmless to the plaintiff. Under proper instructions, we cannot say what verdict the jury might have rendered, acting as reasonable men, the test which we have applied. See Pensacola Electric Co. v. Bissett, 59 Fla. 360, 52 South. Rep. 367.

A large number of instructions were given, both at the request of the plaintiff and of the defendant, some of which are of a conflicting and contradictory nature

and were well calculated to confuse and mislead the jury, but we shall not undertake to point out and discuss this phase. Again and again we have expressed our disapproval of the practice of requesting an unnecessarily large number of instructions. See Gracy v. Atlantic Coast Line R. R. Co., 53 Fla. 350, 42 South. Rep. 903; Atlantic Coast Line R. R. Co. v. Crosby, 53 Fla. 400, 42 South. Rep. 318; McCall v. State, 55 Fla. 108, 46 South, Rep. 321. We would also refer to Kinney v. City of Springfield, 35 Mo. App. 97.

From the different instructions given at the request of the defendant we single out and copy the following, each of which is assigned as error:

"11. The court charges you that it is the law that it is the duty of a traveller to exercise his sense of sight and hearing, and to look and listen for the approaching street car, and that his failure to do so is negligence. *And if necessary it is also his duty to stop—Exceptions noted to charge.*"

14. The court instructs you that it was the duty of the plaintiff, upon approaching the track of the defendant, and before going on the same, to exercise a proper degree of care and caution, and to have made a vigilant use of his eyes and ears for the purpose of ascertaining whether or not a street car was approaching, because it was negligence in the plaintiff to approach the track, or to walk or drive along or across the same without first stopping and looking up and down, because he was bound to presume that a car might be approaching."

"15. With the coming into use of the automobile new questions as to reciprocal rights and duties of the public and that vehicle have and will continue to arise. At no place are those relations more important than at the grade crossings of railroads. The main consideration

hitherto with reference to such crossings has been the danger to those crossings. A ponderous, swiftly moving locomotive, followed by a heavy train, is subject to slight danger by a crossing foot passenger, or a span of horses and a vehicle; but, when the passing vehicle is a ponderous steel structure, it threatens not only the safety of its own occupants, but also those on the colliding train. And when to the perfect control of such a machine is added the factor of high speed, the temptation to dash over a track at terrific speed makes the automobile, unless carefully controlled, a new and grave element of crossing danger. On the other hand, when properly controlled, this powerful machine possesess capabilities contributing to safety. When a driver of horses attempts to make a crossing and is suddenly confronted by a train, difficulties face him to which the automobile is not subject. He cannot drive close to the track or stop there, without risk to his horses, frightening, shying or overturning his vehicle. He cannot well leave his horse standing, and if he goes forward to the track to get an unobstructed view, and look for coming trains, he might have to lead his horses or team with him. These precautions the automobile driver can take, carefully and deliberately, and without the nervousness communicated by a frightened horse. It will thus be seen an automobile driver has the opportunity, if the situation is one of uncertainty, to settle that uncertainty on the side of safety, with less inconvenience, no danger, and more surely than the driver of a horse. Such being the case, the law, both from the standpoint of his own safety and the menace his machine is to the safety of others, should, in meeting these new conditions, rigidly, hold the automobile driver to such reasonable care and precaution as to go to his own safety and that of the public. If the law de-

mands such care, and those crossing make such care, and not chance, their protection, the possibilities of automobile crossings accidents will be minimized. The duty of an automobile driver approaching tracks where there is restricted vision, stop, look and listen, and to do so at a time and place where looking and where listening will be effective is a positive duty."

"17. The duty of an automobile driver approaching a railroad crossing, where there is restricted vision, to stop, look and listen and to do so at a time and place where stopping and where looking and where listening will be effective, is a positive duty."

We shall treat these assignments together. It will be observed that they instruct the jury that as a matter of law it is "the duty of an automobile driver approaching a railroad crossing, where there is restricted vision, to stop, look and listen and to do so at a time and place where stopping and where looking and where listening will be effective, is a positive duty," also that "it was negligence in the plaintiff to approach the track, or to walk or drive along or across the same without first stopping and looking up and down, because he was bound to presume that a car might be approaching." This doctrine was not only stated, but repeated and emphasized. The instructions also lay special stress upon the duty of an automobile driver in approaching tracks to stop, look and listen, as distinguished from the driver of other kinds of vehicles.

The defects which vitiate these instructions are so obvious that extended discussion is not required. It was held in House v. Cramer, 134 Iowa 374, 112 N. W. Rep. 3, 13 Ann. Cas. 461, that "Operators of automobiles have the same right to use the highways that drivers of horses

or other vehicles possess, but they must exercise reasonable caution for the safety of others, and in determining the degree of care required the character of the machine, its speed, size, appearance, manner of movement, noise and the like may be taken into consideration." Also see note to this case on page 463 of Ann. Cas., where a number of authorities will be found collected. It is said in Cunningham v. Castle, 127 App. Div. (N. Y.) 580 text 586, 111 N. Y. Supp. 1057: "The automobile is not necessarily a dangerous device. It is an ordinary vericle of pleasure and business. It is no more dangerous *per se* than a team of horses and a carriage, or a gun, or a sailboat, or a motor launch." It was said in City of Chicago v. Banker, 112 Ill. App. 94 text 99: "The fact that an automobile is a comparatively new vehicle is beside the question. The use of the streets must be extended to meet the modern means of locomotion." The discussion in Moses v. Pittsburg F. W. & C. R. R. Co., 21 Ill. 516, as to the right to the use of streets will be found profitable. Also see Brinkman v. Pacholke, 41 Ind. App. 662, text 666. As was said in the note in 13 Ann. Cas., referred to above: "Accordingly it has been generally held that the owner of an automobile has the same right as the owner of other vehicles to use highways or streets, and that like them he must exercise reasonable care and caution for the safety of others." In fine, whatever may be our individual feelings toward the automobile, and we recognize the fact that some view it with less and some with more favor, it would seem to have come to stay with us, and we would hardly be warranted in classing it as "an undesirable citizen," and we most assuredly cannot treat it as an outlaw.

It is stated, we think correctly, in Clark's Street Railway Accident Law, section 103: "While it is clear that

the right of a street railway to that part of the street on which its tracks are laid is not an exclusive one, it is generally held that its rights are superior to those of the general public, except at street crossings, where the rights of both are equal." Also see Nellis on Street Railroad Accident Law, 270, 36 Cyc. 1495, and authorities cited in the notes.

While the authorities are not in entire harmony upon the point, the decided weight of authority is to the effect that the driver of a vehicle about to cross a street railway track is not, in every case, required as a matter of law to stop, look and listen. See Clark on Street Railway Accident Law, page 293; Nellis on Street Railway Accident Law, 353 et seq.; 36 Cyc. 1537 to 1541. The law is thus stated by Judge Taft in Cincinnati St. Ry. Co. v. Whitcomb, 66 Fed. Rep. 915, text 919:

"The exceptions to the charge of the court are very voluminous, very long, and many of them are quite frivolous. Generally, the exceptions to the charge may be comprehended under three heads: First, the court was asked to charge the jury that it was the absolute duty of Whitcomb not only to look and listen for the coming of the car, but also to stop, look, and listen. It certainly is not the law that persons crossing street railway tracks in a city in a vehicle are obliged to stop before crossing, unless there is some circumstance which would make that ordinarily prudent. We have already held in the cases of Railroad Co. v. Farra, 66 Fed. 496, and McGhee v. White, Id. 502, that it is not the absolute duty, as matter of law, for one crossing a steam-railway track to stop, look and listen, but that the necessity for stopping is to be determined by the circumstances, and is usually a question to be left to the jury, and so the court below in this case treated it. The rule cannot be stricter in

respect to crossing a street railway than in crossing a steam railroad. The cases relied upon are chiefly Pennsylvania cases. In that State the Supreme Court has adopted a rule of law requiring every person to stop, look, and listen before crossing the railroad track. This rule is not followed in other states, and certainly is not the law in the federal courts."

The Supreme Court of Massachusetts, in Robbins v. Springfield St. Ry. Co., 165 Mass. 30, text 36, 42 N. E. Rep. 334, has stated its view of the law as follows:

"The decisions of this court show that a distinction has been taken with respect to the duty to look and listen when crossing the tracks of a steam railroad where a railroad train has the exclusive right of way, and when crossing the tracks of a street railway company in a public street where the cars have not an exclusive right of way, but are run in the street in common with other vehicles and with travellers. The fact that the power used by the street railway company is electricity, instead of that of horses, has not been deemed by the court sufficient to make the rule of law which has been laid down concerning the crossing of the track of a steam railroad exactly applicable to a street railway."

We would also refer to Tacoma Ry. & Power Co. v. Hays, 110 Fed. Rep. 496, and Chicago & Joliet Ry. Co. v. Wanic, 230 Ill. 530, 82 N. E. Rep. 821. The cases of Hackney v. West Jersey & S. R. Co., 78 N. J. L. 454, 78 Atl. Rep. 747, 32 L. R. A. (N. S.) 266, and Phillips v. Washington & Rockville Ry. Co., 104 Md. 455, 65 Atl. Rep. 422, 10 Ann. Cas. 334, especially the respective notes appended thereto, will prove serviceable.

There is no necessity for discussing the other assignments. It necessarily follows from what we have said that the judgment must be reversed.

WHITFIELD, C. J., and COCKRELL, J., concur;

TAYLOR, HOCKER and PARKHILL, J. J., concur in the opinion.